POWELL et al. v. LEICESTER MILLS CO. et al.

(Circuit Court of Appeals, Third Circuit. April 24, 1901.)

No. 25.

1. PATENTS—INFRINGEMENT—KNITTING MACHINES.

The Powell patent, No. 510,934, for a web-holder actuating mechanism for automatic knitting machines, embodies an invention of high merit, which resulted in making a substantial advance in the art, and as such is entitled to favorable regard. Claims 1 and 2 construed, and *held* infringed by the Leicester Mills machine, which employs different, but mechanically equivalent, mechanism to accomplish the same result in substantially the same way.

2. SAME.

Infringement is not avoided by adding a new function to an element of a combination which does not affect its performance of the function of the patent.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For former reports, see 92 Fed. 115, 103 Fed. 476.

Charles Howson, for appellants.

H. T. Fenton, for appellees.

Before ACHESON and DALLAS, Circuit Judges, and BUFFINGTON, District Judge.

BUFFINGTON, District Judge. This case concerns automatic straight knitting machines. In the court below John G. Powell and Edward Powell charged infringement of the two claims of patent No. 510,934, granted to them December 19, 1893, for a web-holder actuating device for such machine. That court, finding there was no infringement, dismissed the bill. Its action in so doing is here assigned for error.

The operative parts of a straight knitting machine are rows of opposing needles, which carry the yarn through successively formed loops; accompanying web sinkers, which hold down the fabric, and serve to doff or withdraw the loops from the hook as they are successively formed; and carriages, which carry the cam mechanism to operate the needles and web sinkers. A straight knitting machine is shaped like an ordinary barn roof, and the knitting is done in an opening corresponding to the roof ridge. The needles are arranged in two straight, opposing rows; are supported and guided on such sloping roof, also styled a "needle bed"; and are adapted to work in the direction of the rafters of a roof towards the ridge opening. The needles are moved forward and backward by reciprocating cams, one for each row of needles; and as fast as the knitting is done at the ridge opening it is drawn down through the center of the machine. The needles have a hook to catch the yarn, and a latch, pivoted on the needle stem just below the hook, adapted to close the hook opening, and allow the hook and its yarn strand to be drawn through a loop as it is lowered, and as it is raised the latch opens and permits the newly-formed loop of yarn to go down to the needle shank, where it forms a loop itself. In this way mechanical knitting is possible, since knitting is simply the interlacing of yarn in a series of connected loops. Between the needles are placed web sinkers, which, as their names indicate, serve to hold down the fabric and draw the loops from the needle hook as they are formed. In the knitting of a stocking on these machines there are three operations: First, "setting up," in which the needles of both rows are simultaneously actuated to seize the yarn, and hold it within their hooks in zigzag fashion. In this operation the needles of one row are thrust forward to occupy the space between the needles of the opposite row. The second operation is "to and fro" knitting. This serves to knit the pocket constituting the heel and toe by a respective narrowing and widening process, which need not be here described. This operation is done exclusively by the needles of one side and their accompanying web sinkers, the knitting being "to and fro" in both directions. In this operation it will be observed one line of needles and its web sinkers are working, but the entire set opposite, and its corresponding web sinkers, are idle. The third is styled "regular" knitting. This is the regular tubular process, which knits the foot and the leg. In this operation one set of needles knits forward, one on one side, and the other knits backward on the other, so that the sets of needles and their accompanying web sinkers are alternately working and idle, while the other sets are, at corresponding times, alternately idle and working. A machine, as thus described, successfully knit stockings before the patent in suit. In these machines, however, the mechanism was such that the web holders operated continuously, and it was impossible to set them directly opposite the needles of the opposing head. To prevent the web sinkers and needles opposite striking, it was necessary to leave space enough between each two contiguous needles for a web holder of the same row and for a needle and web holder of the opposite row; otherwise, the raising

of the web holders of one row would bring them in contact with the advancing needles of the row facing. As a result of this construction, the machines could only knit coarse-gauge goods. This difficulty the complainants wholly overcame by the patent in suit, and produced a machine which was commercially adapted to knit fine-gauge fabrics. The invention was of high merit, resulted in a very substantial advance in the art, and as such is entitled to very favorable regard, unless its relative importance is minimized by another patent,—No. 523,867,—applied for by the same patentee a few months earlier. This prior patent to Powell, while aiming at the same general object as the one in suit, to wit, fine-gauge knitting, was along wholly different lines. It retained the stationary web-sinker cam of the old art with the complexity of mechanism incident to the old style of construction, and did not embody the simple and novel element of a shifting web-sinker cam, first shown in the patent in suit. Very few machines embodying its principles were built, its methods were abandoned, and it has filled no working place in the art. Its disclosures were not such as to forestall Powell's later device, or derogate from the marked and substantial advance disclosed by him in the branch of fine-gauge knitting. It will be noted that in all machines prior to Powell's patent the web sinkers were raised by cams, which, when the machine was operated, occupied a fixed relation to them, and this fixed position of the web-sinker cam was the obstacle that precluded fine-gauge mechanism and knitting. The fixed position of the web-sinker cam, and its consequent fixed relation to the needle cams, was such that, when the needles were vibrated, both sets of web sinkers had also to vibrate. This difficulty Powell overcame by devising means in which the web-sinker actuating mechanism became wholly independent of the needle sets. So radical was this change that in knitting they could, independently of the needles, take three different positions in relation to said needles. In "setting up," where they were not functionally needed, the web sinkers on both sides could be made inactive while both sets of needles were at work. In "to and fro" knitting the row of web sinkers on the active side could be functionally operated both in the forward and backward movement of the carriage, and the web sinkers on the other side made inactive. In "regular" knitting they could be alternately active and inactive during the knitting of each half of the tube. The mechanism devised by Powell caused the web sinkers to move only when functionally needed. At all other times they were idle. This result Powell accomplished by means of a shifting or movable web-sinker cam, the use of which as a web-sinker actuating device he first disclosed. The claims here in question are the first and second, which are:

"(1) In a machine having two opposite sets of needles working alternately for the production of tubular web, and movable web holders for each set of needles, the combination of said needles and web holders, with cams for operating the latter, and with means for throwing said cams into and out of operative position, whereby each set of web holders may be caused to functionally work only when its own set of needles is in action, substantially as specified. (2) In a machine having two opposite sets of needles working alternately for the production of tubular web, and simultaneously for the pro-

duction of a 'setting up' course, and movable web holders for each set of needles, the combination of said needles and web holders with cams actuating the latter, and means for throwing one set of cams into action during one movement of the head, and the other set into action during the opposite movement of the head, and means for throwing both sets of cams out of action simultaneously during the one movement of the head devoted to the formation of the 'setting up' course, substantially as specified."

There is nothing in these claims to limit them to specific constructions, and we find nothing in the prior art to impose such limitations. In this connection we note Bennor's prior patent, No. 483,317, which, when all is said, was only for a coarse-gauge machine. In it we find a longitudinally slotted T head, physically somewhat resembling, but in functional power and use totally unlike, the T head afterwards employed by Powell. The slot therein was evidently for set-screw adjustment of the cam from and towards the sinker butts, to make up for wear. Such adjustment and use of the slot were made only when the machine was idle. When the machine was operated the cam was immovably fixed, as in the old style, and by reason of such fixed relation its product was limited to coarse-gauge fabrics. In Powell's patent in suit we find that in one head or side of the knitting machine the web sinker cam bar has two movable cams mounted on a crossbar carried on a slide guided in the head, and provided with a cam slot, which engages with a pin on a crossbar, which latter is adapted to be operated by stops on the machine frame, and is wholly independent of the needle-actuating mechanism. So long as these movable cams remain in the recess of the cam bar, they clear the sinker butts, and are inoperative. When, however, the bar engages with the stop, they are projected, the cam strikes the sinker butts, and the web sinkers are vibrated. On the other head the same kind of sliding T head is used, with but one movable cam. On this head one cam suffices, since the web sinkers are only actuated when the carriage travels in one direction, while on the other two are necessary, since the web sinkers must co-act with the needles in both forward and backward carriage movement for "to and fro" knitting. It will, of course, be apparent that, as both web sinkers and needles are simultaneously operative and simultaneously inoperative in the different stages of both "regular" and "to and fro" knitting, and since they both move transversely on the same plane, they could be connected rigidly, and actuated by a single slide bar and a single stop, instead of by two separate slide bars acting simultaneously upon two separate stops. For functional purposes during these operations two independent slide bars working simultaneously and one actuating both sets of cams are substantially the same. When, however, the third relation is desired, to wit, "setting up," where the needles are active and web sinkers inoperative, then the web sinkers must be actuated by a different mechanism, and a third element is required. To accomplish this, the slide bar on the side with the double cam has an enlargement with a lug adapted to engage a special stop. This releases the cams before starting the "setting up" course. They are thrown into action after this course, and remain in action continuously during "to and fro" knitting and alternately during tubular work. The alleged infringing device is

different in form, but an analysis of its mechanism and functional operation shows that it uses the same elements, operating in substantially the same way, as the combination of Powell's claims. Respondent journaled its carriage at the lower edge of the needle roof, instead of the upper, as Powell did. Upon the same journal, and between the arms of the carriage body, so as to respond to every movement of the carriage, and to constitute a part thereof, was placed a swinging arm carrying both the needle cams and the web-sinker cams. As these two sets of cams bore a fixed relative relation to each other when both were operative, and also when both were inoperative, it is clear that they could both be simultaneously made operative and also made inoperative by a single slide bar, which causes the rocker arm to swing upward or allowed it to swing downward. Such construction we find adopted in the respondents' machine. Instead of the cams being forced outward and inward, and at right angles with the journal, as in Powell, we find them in respondents' machine swung upward and downward, so as to respectively clear or engage the butts of the sinkers and the needles. This difference is one of form, not substance. In both we have cams for operating the web holders, we have means for throwing the cams into and out of operative position, and the result is that each set of web holders works only when its own set of needles is in operation. In Powell the cam is by a stop and slide bar shifted forward and backward so that it will clear or engage the sinker butts; in the respondents' structure the cam is shifted up or down so that it will clear or engage the sinker butts. It will thus be seen that in tubular knitting, to which the first claim applies, where the needles and sinkers are both in operation and both out of operation together, these changes can be made by either one slide bar actuating both sets of cams conjointly, or by two slide bars actuating each set simultaneously. True, the slide bar which shifts the sinker cam in Powell shifts it alone, while in respondents' it not only shifts the sinker cam, but the needle cam as well. But this added burden of needle-cam shift, which in no way affects its web-sinker shifting function, will not relieve it from infringement. Masseth v. Palm (C. C.) 51 Fed. 825. It is therefore clear the first claim is infringed. The second claim covers "setting up," where, as we have seen, both sets of needles and neither set of sinkers are in operation,—a different relation of needles and web sinkers from those in both "regular" or "to and fro" knitting. It was noted of respondents' machine that, as the needle and sinker cams bore a fixed relative relation to each other, so far as the swinging of the arm was concerned, therefore, when the slide bar swung the needle cams into operative relation, it swung the sinker cams also into operative relation as well. Obviously, this would not avail in "setting up." To obviate this difficulty, the respondents place both needle cams and web-sinker cams upon a slide in the swing arm, which is actuated by a second slide bar. The effect of this second slide bar is such as to shift or slide the cams to a point where they travel in a different arc, or a circle, and strike the needle butts and sinker butts in a different way than when swung in regular knitting. The result of

this slightly changed angle of impact is to put the needles in an intermediate relation of action sufficient for "setting up," and to put the web sinkers in a position where, while they are slightly vibrated, they are functionally powerless, and do not interfere with the opposing needles. Now, while this is true that in Powell's device the slide bar which shifts the web-sinker cam in "setting up" shifts it alone, and that respondents make it shift not alone their sinker cams, but their needle cams as well, yet this additional duty does not make it any the less an infringement. The device of Powell and the claims in question are, as noted, for a web-holder actuating mechanism. Such web-holder mechanism the respondents have avoided in form, but appropriated in substance. In springs we find the equivalent of a cam bar, and in other respects they use the mechanical equivalents of Powell's device. They secure the same result, and secure it in substantially the same way, as the patented device. We are of opinion infringement of both claims is shown. The decree of the court below will be reversed, and the record remitted, with instructions to enter a decree in favor of the complainants.