## O'LEARY et al. v. UTICA & MOHAWK VALLEY RY. CO.

### (Circuit Court, N. D. New York. July 24, 1905.)

### No. 6,965.

**1. PATENTS—VALIDITY AND INFRINGEMENT—CONVERTIBLE CARS.**

The O'Leary reissued patent No. 11,992 (original No. 664,890) for convertible cars, having sliding window sashes and panels in the sides, removable at will, so as to convert the car from a closed to an open one, or from an open to a closed one, discloses patentable invention, and is of a pioneer character. It covers, by the term "convertible car," cars which are semiconvertible, in that the panels below the window sashes are not removable, as distinguished from those in which the sides are removable to the floor, so as to make a wholly open car, which can, if desired, be entered from the sides; the essential feature of the invention being the means by which the panels or sashes are moved to form an open car, and stored in a chamber within the roof while not in place. Also *held* infringed by cars constructed under the Brill and Bucknam patent, No. 709,073.

**2. SAME—INFRINGEMENT—ADDING NEW FUNCTION.**

Infringement is not avoided by adding a new function to an element of a combination which does not affect its performance of the function of the patent.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 380.]

Suit in equity to restrain alleged infringement by defendant of certain reissued United States letters patent, and for an accounting.

Frank C. Curtis, for complainants.

Kernan & Kernan (Joseph L. Levy and Francis Rawle, of counsel), for defendant.

RAY, District Judge. The reissued United States letters patent in suit, No. 11,992, dated May 20, 1902, are for new and useful improvements in convertible cars. The original letters patent were numbered 664,890, and dated January 1, 1901. Application therefor was filed July 6, 1898. Application for reissue was filed March 21, 1902. The claims in suit are numbers 1, 2, 4, 6, 7, 8, 9, 10, 13, and 14, and read as follows:

"(1) In a convertible car, the combination with the decked roof, grooved roof-supporting ribs, and a series of inflexible slide-panels vertically movable in the rib-grooves; of a corresponding series of storage-chambers extending from one side of the car approximately to the top of the deck of the car, substantially as described.

"(2) In a convertible car, the combination with a series of upwardly and inwardly inclined storage-chambers subjacent to the roof of the car; severally provided with oppositely-located upwardly and inwardly inclined slideways; of a corresponding series of inflexible panels vertically movable in slideways in the vertical side walls of the car and severally provided with guides movable in the respective inclined chamber-slideways, substantially as described."

"(4) In a convertible car, the combination with a pair of vertically-movable mutually-lapping panels; of a pair of panel-supporting ribs, each rib having, intermediately of its lower and upper ends, separate slideways for the respective panels, which slideways merge into each other and gradually increase in width and incline inwardly from the merging point toward the top of the car, substantially as described."

"(6) In a convertible car, having a decked roof, the combination with an inclosed deck-chamber extending upwardly and inwardly from the side of the car and provided at its outer and lower end with a downwardly-opening mouth,

of a guideway extending in an irregular path from a point near the mouth of such chamber in close proximity to the outer and upper wall of such chamber approximately to the top of the deck; panel-supporting vertical ribs, and an approximately straight and inflexible panel provided with a guide on its upper end movable along said guideway, substantially as described.

"(7) In a convertible open and closed car, the combination of the sliding window sashes, and panels, one of said parts being formed with an abutment for the other to bear against and for sustaining one part from the other as they are raised, and means for supporting the sashes and panels in the space between the chamber-walls in the top of the car, substantially as described.

"(8) In a convertible open and closed car, the combination of the sliding window sashes and panels, one of said parts being formed with an abutment for the other to bear against and for sustaining one part from the other when they are raised, and means for supporting the sashes and panels in the space between the ceiling and roof of the car, substantially as described.

"(9) In a convertible open and closed car, the combination of the sliding window sashes and panels, one of said parts being formed with an abutment having a recess to receive a portion of the other, so that the parts may be moved together and one be supported from the other when stored in the space between the ceiling and roof of the car, substantially as described.

"(10) In a convertible open and closed car, the combination of the sliding window sashes and panels, members formed with ways to guide said parts when sliding; a pintle or roller secured to one of said parts; and members formed with ways in the space between the ceiling and roof of the car to receive said pintles and rollers for guiding said parts in said space, substantially as and for the purposes described."

"(13) In a convertible open and closed car, the combination with the car-body having a panel-receiving recess or chamber extending inwardly from the side wall of the car, and side ribs provided with panel supporting and guiding grooves leading to said chamber; of an inflexible panel; means for guiding said panel along the grooved ribs and into and out of said chamber; and means for supporting said panel in an inclined position in said chamber.

"(14) In a convertible open and closed car, the combination with the car-body having a panel-receiving recess or chamber extending inwardly from the side wall of the car, and side ribs provided with panel supporting and guiding grooves leading to said chamber; of a plurality of inflexible panels; means for guiding said panels along the grooved ribs and into and out of said chamber, and means for supporting said panels in inclined position, one above another, in said chamber."

The patent in suit says, in the specifications, that the invention relates to improvements in convertible cars, and "it consists of the novel construction and combination of parts hereinafter described and subsequently claimed." Reference is had to certain drawings made a part of the specifications. The patent, in the specifications, further says:

"The object of my invention is to provide a convertible car with a convenient means for storing the movable inflexible panels which inclose the sides of the car in inclement weather when the panels are removed from the sides of the car to provide an open car without materially changing the interior or exterior dimensions of the car."

The specification then says, recurring again to the subject of the invention, "The invention consists of the novel construction hereinafter described, and particularly specified in the claims." I do not think this was intended to restrict the patent to a mode of construction. The patent also says that the top or roof of the car is connected with the bottom by vertical posts or ribs which support the roof. The usual deck-opening in the top of the car is formed by vertical deck walls raised from the inner roof or ceiling, and is

covered by the outer or main (real) roof. The ribs (or posts) are each provided with a slideway for the lower panel, which is usually solid, but might be a sash panel, and a separate slideway for the upper or sash panel. It is stated that these slideways are preferably separated at the lower end of the sash panel (upper panel) slideway by a stop which terminates about midway between the upper and lower ends of the rib, and above which the two slideways merge into each other, and the slideway (or slideways merged into one) then gradually increase in width, and incline inwardly to the top of the car. Just outside of the slideway, after the merger has taken place, is provided a groove serving as a guideway (another and different guideway from the slideway just described), which receives a roller rotatively supported by a stem or bracket, which stem or bracket is secured to and projects from one end of the sash panel; that is, as the sash panel is pushed upward, this roller attached thereto, moving in the guideway or groove last mentioned, compels the upper end of the sash panel to follow the groove or guideway, and, as this groove turns inwardly more and more, the upper end of the sash panel and whatever is attached to and carried with it is turned more and more inwardly (that is, towards the center of the car), but, by means of the guideway and roller and bracket, is kept near the outer or main roof, and above the inner roof or ceiling. Gradually the sash panel (and also the solid panel by its side, as will be seen) assumes more and more of a slanting position, until when wholly within the storage chamber in the roof formed by the main or outer roof and the inner roof or ceiling of the roof of the car (which storage chamber in a house would be called the "garret") the panels lie at an angle of about 45 degrees, wholly concealed from sight and protected from dust. The upper edge of the sash or upper panel is provided with a cap or abutment having a groove, and when it is desired to raise and store both panels the lower or solid panel only is pushed upwardly; that is, force is applied to it only. When its upper edge reaches and enters the groove in such cap or abutment, it engages therewith, and the raising or upward movement of the solid or lower panel then moves the sash panel also, and carries it with it; and both, sliding in the slideway first spoken of, and guided by the roller moving in the outer groove or guideway, and allowed to assume the slanting position gradually by means of the merged and constantly widening slideway, move side by side into the storage chamber, where they remain until it is desired to convert the now open car again into a closed car, secured by a spring bolt or bolts seated in the lower edges of the two panels, and adapted to enter a receiving socket in the body of the rib, and which socket is located at or near the bottom of the storage chamber, and also by the roller dropping into the recess as hereafter mentioned. To form the storage chambers for concealing and protecting the panels when not in use, the roof of the raised deck of the car is continued on practically the same curve to the vertical sides of the car, nearly; and here are provided vertical ventilator walls, and then the lower roof wall is curved down to the vertical sides of the car in the usual manner. In short, the

main or lower roof is made wider than usual, to aid in the forma-
tion and construction of, or, more properly, to make room for, the
storage chamber. At the lower end of the storage chambers, or
lower edge of the ceiling, such chambers have an opening or mouth
of the same width as the slideways for the panels at that point.
When the panels are in use this opening is closed by the cap or
ledge or abutment on the upper edge of the sash panel. This clos-
ing of this opening protects passengers from a downward draft of
air. This cap or abutment thus performs a double function. The
panel guideway carrying the roller follows closely the outer wall
and roof, and as a result the upper ends of the panels are close up
to the outer roof, and there is little slanting until the bottom of
the panels have entered the storage chamber, and the result is that
but little widening of the mouths of these chambers is required. In
this way the general size and shape of the car are maintained. It
will be seen that the guideways form an irregular path, following
the contour of the side of the car and roof, and this makes it possi-
ble to make available all the space in the ordinary car, and hence
the storage chambers increase its size very little. The extreme up-
per end of this panel guideway is recessed, and forms a seat for the
roller attached to the sash panel; and by this means, until released,
the upper end of the upper panel is held in position in the chamber
until forcibly released. This also holds the lower or solid panel in
place, as, from the time the lower panel engages with the groove in
the cap of the upper or sash panel, both move side by side. This
is an operative device, and shows patentable invention of great
utility and merit. A wholly convertible car is one where the sides,
from floor to roof, are composed of panels and ribs or posts, and
which panels may be removed in some way to some place so as to
make a car wholly open on the sides. A semiconvertible car is one
where the lower panel is not removable; that is, it forms an inte-
gral part of the car. It may be higher or lower, but the construction
is such that in a semiconvertible car the side of it is not open to the
floor when the movable panels are removed so as to make an open
car. I am asked to find and hold that in this patent in suit the
words "convertible car" and "convertible open and closed car" in-
clude the "semiconvertible car." A "self-contained" or "self-con-
taining convertible car" is one which somewhere within it has the
storage for the panels when removed from the sides, either by push-
ing them up or down or sidewise, or removing them from the sides
entirely, so as to form the necessary openings. A convertible car
(truly such) must have end entrances as usual in cars. Otherwise
(unless it should be provided with a side door) the passengers would
be boxed up and imprisoned—"shut in"—should it be converted into
a closed car while they were inside, and would be prevented from
entering at all when outside; that is, "shut out" when the car is
being used as a closed car. It is very material in car construction—
especially street car construction—for many apparent reasons, to
keep the car within certain dimensions, not only in height and
length, but especially in width. There must be economy of space,
both inside and out, as well as of weight, and expense of operating.

The car must also have the necessary capacity for holding passengers without crowding or causing them discomfort. It is necessary to have the movable side panels along with the car, and in such position as to be easily and quickly handled, without being unsightly or interfering with the passengers or those operating the car. When it begins to sleet or rain the panels can be put in position; when it turns warm they can be quickly opened, etc. As to the storage chamber, it is not necessary to mention all the considerations, but it may be of moment to say that a closed storage chamber for holding the panels when not in actual use—that is, when not being actually used for closing the sides of the car—is essential, as otherwise, in summer time, dust would accumulate on the panels, and, from the jar of the car, or even the action of the wind, fall in quantities on the passengers. Neither would they present the clean and neat appearance they ought when brought back into actual use.

The defendant insists that, if broadly construed, the complainants' patent is void for want of patentability, in view of the prior art; that, if construed narrowly, as required by the state of the art as the art was at the time of the invention, the complainants' patent does not cover the defendant's structure, and therefore is not infringed. The defendant also insists that the patent in suit is, by its terms and on its face, expressly limited to a "convertible car," and that as the structure or car used by defendant is not a convertible, but a semiconvertible, car, it does not infringe. Defendant insists that the convertible car is a type of car it does not use. This question should be first disposed of. It is true that complainants are not pioneers in the art of building convertible cars, in the broad meaning of the term. Their patent and each claim must be construed in view of the prior art, and limited accordingly. But this court cannot find evidence, that is convincing, to satisfy it that the patent in suit is confined to wholly convertible cars; that is, to those cars where, when converted to an open car, the sides between the floor and the lower edge of the roof, and between the ribs, posts, or stanchions, are wholly open. If so narrowly construed as this, nonmovable panels six inches or a foot wide or high, next the floor, and extending the length of the car, would take such car from the class or category of "convertible cars," even if such car had no doors or means of exit to the street or ground at the ends, and all the world would be at liberty to use complainants' structure in all cars of that description. I am of the opinion, and hold, that the words or terms "convertible car" and "convertible open and closed car" include "semiconvertible cars"—those where the panels, both solid and sash panels, are to be removed from the spaces they usually occupy when in use to close the car whenever it is desired to convert the car into an open car; that is, one having the panels removed from the spaces they usually occupy to close the car, so as to leave those spaces wholly open to the air and sunlight, or, it may be, storm, whether such panels reach from roof to floor, or only part way from roof to floor. In a wholy convertible car, when converted into a wholly open car (referring to the sides), the

panels are removed to the floor; and, if not obstructed by a railing or otherwise, the passengers, if the seats are arranged transversely, may step out or in at the sides, as well as at the ends, if end doors are provided. In semiconvertible cars this is not practicable, even if possible. In some wholy convertible cars we find a step on each side, running the entire length of the car. In others we do not find this, the purpose being to have the passengers enter and leave at the end of the car only. In some constructions we find the seats running from side to side of the car; that is, there is no center aisle, as in those cars where transverse seats are used, and it is intended to have the passengers enter and leave at the ends of the car only. I find nothing in dictionary definitions, or the generally understood language of the art, or in the language of the specifications or claims, that requires or justifies a finding or holding that confines the complainants' patent to wholly convertible cars, or that excludes semiconvertible cars from its claims. In fact, using the language of the company that makes the alleged infringing cars, the term "convertible cars" includes "semiconvertible cars." The alleged infringing car is not, as constructed, a wholly convertible car, but is a semiconvertible car, as usually known and described when the purpose is to differentiate different constructions of convertible cars. This structure of defendant's is made under the United States letters patent No. 709,073, issued to Brill and Bucknam, dated September 16, 1902.

The complainants' patent has for its leading object the storing of the movable, inflexible panels of the car, used to inclose the sides of the car, when removed to form an open car, and to store them in a chamber in the roof of the car without taking them out of the panel frames and lifting them up bodily and shoving them into a storage chamber, and to do this without materially changing either the interior or exterior dimensions of the car. As to means or a way of accomplishing this particular idea of so storing an inflexible side panel, O'Leary, complainant, seems to have been the pioneer inventor. The way and means of doing this are not found in the prior art. It is suggested, perhaps, by the Brownell patent of April 3, 1888, No. 380,617, for, if by means of grooves and slideways the panels can be run up into the open top of the car, the next idea would be to run them into a chamber of proper dimensions formed in the roof without substantially changing the general dimensions or appearance of the car. They are to be out of sight and protected, etc., as before mentioned. Of course, it would not do to materially reduce the height of the interior of the car. This, for many reasons, would be very objectionable. Brownell seems to store the panels within the interior dimensions proper of the car, and not within the roof dimensions after being inclosed; in other words, in a superfluous space, so far as the use of the interior of the car for the accommodation of passengers is concerned. Here we must give to complainants' patent a broad construction. It seems clear that O'Leary, in complainants' patent, was the first to provide such a chamber for inflexible panels, successfully at least.

If defendant is using a manufacture (and we must keep in mind that this patent is for and relates to a manufacture, not a machine) that includes all the elements of complainants' patent in substantially the same combination for the same purpose, and working or operating in substantially the same way, and actually accomplishing the same purpose or producing the same result, it infringes complainants' patent, if that patent is valid, even if defendant has added to its structure an element not found in complainants' patent, or more than one, or has changed the form of the elements, or of some of them. Let us note the general purpose of the complainants' patent: First. A closed storage chamber in the roof of the car is desired. Without it there can be no storage of the panels in a chamber. Second. It must be so formed and of such dimensions as to receive the panels, and these must be of about a certain size. They are inflexible, and cannot be bent. They are straight, and must be carried up without strain which would break the glass. The form and appearance and general size of the car must not be changed. To do this, they must change position from perpendicular to semihorizontal. This change is to be made within a limited space, and while passing and immediately after passing through the opening into the chamber, which must not be too large. After O'Leary had done all this successfully and secured his patent, after a contest, we find by reference to the file wrapper of defendant's patent that Brill and Bucknam (patentees of alleged infringing patent) strenuously and persistently struggled in the Patent Office to cover the same thing, and obtain a patent therefor. It would take too much time and occupy too much space to go into detail, but nearly if not quite a score of claims made by Brill and Bucknam, covering more or less the claims of the O'Leary invention and patent, and many of them plainly an infringement if made operative in the art, were rejected or changed in the Patent Office. In the prior art almost universally the panels had been made curved—those having glass with curved glass—and the body of the car curved accordingly, or flexible panels had been used, etc. Flexible panels had been stored in a pocket or chamber in the roof of the car. Made flexible, they operated like the flexible top of a roll top desk. But the storage of inflexible panels was quite another thing. Here was demanded the merging slideways and the increasing width thereof as the panels approached the top of the car. This and the recessed abutment, with the interlocking function, are not found in the prior art. The novel features of complainants' patent are found in the defendant's car alleged to infringe. It is true that in defendant's car the pockets in the roof are of different shape from those in complainants', but so is the shape of the roof itself; and it is well settled that a mere change of form or location of one or more elements, if the functions performed remain the same, and they are performed in substantially the same manner, does not avoid infringement. It seems clear that the mode or manner of storing the inflexible panels is substantially the same in defendant's car as in complainants'. There is nothing in complainants' patent that con-

fines or limits them to the precise form and dimensions and location of storage chamber shown in the drawings of that patent, except it must be in the roof, or that allows defendant to use a similar storage chamber for the same purpose in this kind of a car. The complainants first occupied this field. Defendant's car has a pair of vertically movable mutually lapping panels, surely, and a pair of panel supporting ribs (posts), and each of these ribs has intermediately its lower and upper ends separate slideways for the respective panels, and these, when merged, increase in width and incline inwardly towards the top of the car. Even if we fail to find for a short distance a division bead or rib, the fact remains that there are separate slideways, one for each panel, and it is entirely immaterial that the short partition is not found in defendant's structure. To my mind it is entirely immaterial whether we say separate slideways for the respective panels, or slideways which merge into each other and gradually increase in width, etc., or a broad, gradually widening slideway for the separate (respective) panels, etc. The one is the same as the other, in this construction and for this purpose, and performs the same function. The bead is superfluous. The broad slideway for both, as found in defendant's car, constitutes "separate slideways for the respective panels," inasmuch as the one panel cannot slide in the path or slideway in which the other moves. Each has as its slideway the path or position in which it moves. As well might we say that we do not have separate tracks for the respective parties who travel by wagon and by bicycle, because such tracks lie side by side and merge into one broad track, but each traveler uses and must use and follow his particular portion of the broad way. Again, this division is not made a part of the device. It is mentioned as a preferable mode of construction, simply, not as a necessary part of an element, or as an element in and of itself. Defendant's construction clearly infringes claims 7, 8, and 9 of the complainants' patent, unless it escapes because the mode of interlocking the top of the lower panel with that of the upper panel, when in the upward movement it reaches it, differs from complainants' device made for that purpose. The movement of the lower panel up to that point is the same; the movement of the two panels side by side and interlocked, from that point on until they find their resting place in the storage chamber, is the same; the purpose of the movement in each case is the same, viz., to carry the two panels side by side into the storage chamber, and there retain and protect them. The mode of interlocking and the means for interlocking are different, but the one is clearly the equivalent of the other. The two do the same thing in substantially the same way for the same purpose or object. Perhaps defendant's does a little more locking, but, if so, it is unnecessary for the accomplishment of the object of the invention. If the charge of infringement in this case can be avoided because of this difference, the charge of infringement can always be avoided in any case. The invention of O'Leary does not reside in the inter-

locking means. Defendant's expert seems to claim that the defendant's interlocking abutment does not infringe complainants' claims, for the alleged reason that it does more than complainants' does; that it performs one or more additional functions—interlocks the two panels in all directions instead of two only. In the first place, such an interlocking in all directions is not necessary to the invention, or its complete working and success. Then, again, infringement in such a matter is not avoided because defendant's interlocking mechanism performs an additional function.

In Powell v. Leicester Mills Co. et al., 108 Fed. 386, 47 C. C. A. 416, it was held that "infringement is not avoided by adding a new function to an element of a combination which does not affect its performance of the function of the patent." This would seem to be a common-sense rule, and applicable here. The evidence shows that the makers of the alleged infringing car, in their application for their patent, No. 709,073, claimed that they had overcome a defect in all prior convertible car construction by a device which made one sash operate the other. For this they made a claim, as is shown by the evidence, only to have it repeatedly rejected as it was repeatedly made by them in more than one form. The idea and device for "making one sash operate the other" was in complainants' patent, and protected by it. We read in one of their (Brill and Bucknam) rejected claims, "Means to cause said sections [panels] to engage when one is raised, whereby lifting one lifts all;" and in another, "Means to cause a lower section [panel] to engage and lock with an upper section when it is raised, whereby lifting the lower section also lifts the said upper section;" and in another, "In a car having side openings, posts to define said openings, sectional sash panels, means to cause the lower section to lock with the upper when it is raised, whereby lifting the said lower section also lifts and carries with it the upper section." The same thing was repeated in various ways, but rejected. All this, as stated, was covered by the complainants' patent. The defendant is now using this construction, with these elements, for this purpose, which was patented to complainants, and for which thereafter the makers of the infringing car sought a patent in vain. It was denied them not because not patentable, but because already patented to O'Leary and his assignee. The court cannot find anything that avoids infringement by defendant of these claims of complainants' patent. In claim 2 of the patent in suit we find the combination in a convertible car of (1) the storage chambers (and these are in defendant's car); (2) oppositely located upwardly and inwardly inclined slideways (and these are in defendant's car); (3) a corresponding series of inflexible panels vertically movable in slideways in the vertical side walls of the car, and each severally provided with guides movable in the chamber slideways (and these or their equivalent the defendant's car has). This claim is not void for anticipation in the prior art, and, in view of that art, discloses patentable invention, and is infringed by defendant's car. Claims 13 and 14 are valid and infringed for reasons already given in speaking of other claims. Defendant insists that there

is no infringement of some, if not all, of the claims of complainants' patent, limited as they should be in view of the prior art, for the reason that in complainants' construction the panels, after being interlocked, are guided by the movement of lower panel, and not by that of the upper, as in complainants' patent. I do not see that this is material, or that it avoids infringement. The two panels are moved side by side, the lower first moving up by the side of the upper. At this point they interlock in both constructions. From now on, being interlocked so as to form in effect one, for all the purposes of the invention it is entirely immaterial to which the guiding apparatus is attached. O'Leary was the inventor; the complainants own the patent; the claims in suit are valid, and, in view of the prior art, disclose patentable invention. Properly construed, the defendant's car infringes the claims in suit.

Complainants are entitled to a decree accordingly, and for an accounting.