O'LEARY et al. v. UTICA & MOHAWK VALLEY RY. CO.

(Circuit Court of Appeals, Second Circuit. March 20, 1906. Motion for Stay of Mandate April 2, 1906.)

No. 239.

PATENTS—VALIDITY AND INFRINGEMENT—CONVERTIBLE CARS.

The O'Leary reissued patent No. 11,992 (original No. 664,890) for convertible cars was not anticipated, and discloses patentable invention in its essential feature which is the means shown for storing inflexible side panels or sash in the roof of a car without such material changes in its construction as to affect the public convenience. It also covers cars which are only semiconvertible in which such means are used. Claims 4, 10, 13, and 14, *held* infringed by cars constructed under the Brill & Buckham patent, No. 709,073. Claims 1, 2, 6, 7, 8, and 9, *held* either invalid for lack of invention, or not infringed by such construction.

Appeal from the Circuit Court of the United States for the Northern District of New York.

Appeal from interlocutory decree of the Circuit Court for the Northern District of New York, on final hearing, sustaining the validity, and finding infringement by defendant, of complainants' reissued letters patent, No. 11,992, granted May 20, 1902, to J. O'Leary,

for a convertible car, and ordering an injunction and an accounting. The opinion of the court below is reported in 139 Fed. 330.

Francis Rawle, Joseph L. Levy, and Edmund Wetmore, for appellant.

Frank C. Curtis, for appellee.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. The learned judge who tried the cause below has fully and accurately stated and discussed the construction of the structures in question and the issues presented by the record. We concur in his conclusions that while the patentee, O'Leary, was not a pioneer in the art of building convertible cars; yet that his combination is a meritorious one, and shows patentable invention, and that it is not confined to wholly convertible cars, and that in the conception and creation of the patented means for accomplishing the idea of storing inflexible side panels in the roof of a car, without such material changes in its interior or exterior dimensions as affect the public convenience, he provided devices not found in the prior art.

But we are unable, for reasons to be hereafter stated, to concur in the conclusions that the devices covered by claims 7, 8, and 9, show patentable invention, and in his conclusions as to certain of the other claims in suit. That the patentee made a useful invention is abundantly proved. The practically abandoned experimental models made by the Brill Company, the real defendant in interest herein, the fact that it never made any construction like the alleged infringement until after O'Leary had obtained his patent and shown it to the president of said company, the cogent and persuasive fact that in the Brill model illustrating the use of inflexible and flexible sashes, its constructors showed their inability to adapt their methods to the storage of an inflexible sash overhead, and were obliged to arrange it so as to slide downwards, the state of the prior art, and the fact that with a great body of would-be inventors in the field, O'Leary was the first to show in a car a method of storage in an overhead chamber of inflexible panels arranged to slide abreast instead of tandem; the absence from the hansom cab structure of the merging and widening grooves, and the impossibility of adapting its construction to the roof of a car without substantial and radical modifications; the obviation by O'Leary of all overhead obstructions or interference, and the adoption by the Brill Company of a modified form of the patented car, considered together, show a compliance with the most rigid requirements of the tests of invention and demonstrate patentable novelty beyond question.

Further forcible evidence of O'Leary's priority of invention and of defendant's infringement is found in the Patent Office history of the Brill and Buckham patent, No. 709,073, under which the Brill Company constructs the infringing cars. It appears from the file wrapper thereof, that the patent in suit was cited either alone or in connection with other patents on 22 claims originally inserted in defendant's application. These claims covered, inter alia, means for causing the inflexible panels to lock with each other so that one should

carry the other to a roof storage place, and guiding and folding means for such panels, and separate grooves in which the panels should move. These claims having been rejected were either canceled or amended. This acquiescence is persuasive evidence of an admission on the part of the patentee of the defendant's car that the O'Leary device was an anticipation, or at least a disclosure, of certain of the elements of defendant's construction, and therefore is persuasive evidence of an admission that if the means covered by said claims were later than those covered by the patent in suit, they would be an infringement thereof. Before passing to a consideration of the patent in suit, it is proper to refer to the Ball British patent of 1892 for windows of a hansom cab. This patent is much relied on by counsel for defendant. It is, however, not adapted for use in a street car, and we are of the opinion that the changes and modifications requisite to adapt it for such a purpose would constitute invention. Moreover it has no merging or widening slideways, and is not in any way adapted to be raised above the head of the passenger without interfering with his free movement, or to be stored in the top of a car in a storage chamber so constructed as not to offer an obstruction to the heads of passengers. The expert for defendant did not refer to it on his direct examination, and was forced to admit that he did not regard it as having any closer bearing on the subject-matter of the claims in suit, than the other patents discussed by him. In what did the invention of the patent consist, and what was the object the patentee sought to achieve, and how did he accomplish it?

In his specification he says:

"The object of my invention is to provide a convertible car with a convenient means for storing the movable inflexible panels which enclose the sides of the car in inclement weather when the panels are removed from the sides of the car to provide an open car without materially changing the interior or exterior dimensions of the car."

This object was accomplished, as stated by the patentee, as follows:

"As a means for concealing and protecting the panels when not in use, I provide the storage chambers, P³, by continuing the roof of the raised deck on practically the same curve nearly to the vertical sides of the car, as seen in Fig. 2, where I provide the vertical ventilator-walls, C, then curving the lower roof-wall, C, down to the sides of the car in substantially the usual manner."

The arrangements for the raising and storing of the panels is stated by him as follows:

"Two slideways merge into each other and gradually increase in width, and incline inwardly to the top of the car. Just outside the merged slideways I provide a guideway consisting of a groove, B², adapted to receive a roller, P⁴, rotatively supported by a stem or bracket, P⁵, secured to and projecting from one end of the sash-panel. * * * The guideway, B³, extends throughout its length in close proximity to the outer wall and roof of the car, following the outline of the outer and upper side of the deck-chamber, whereby the panels can be raised approximately to the top of the deck-chamber with comparatively little inward movement or incline, and the inward movement of the upper ends of the panels, occurring after the lower ends of the panels are well up into the mouth, C², of the chamber,

does not necessitate any considerable enlargement of the mouth in width, such as would make the opening unsightly or conspicuous. By thus extending the guideway in an irregular path, so as to take advantage of the full height of the deck-chamber during the first part of the movement, of raising the panels, I am able to make use of inflexible comparatively straight panels, which could not otherwise be done without greatly enlarging the mouth of the chamber."

The elements involved in the invention covered by the claims in suit comprise, as shown in the patent: (1) The formation of the storage chambers above the usual roof level, and at the side of the usual upper deck. (2) The irregular guideway, B³, following the outline of the outer and upper walls of the panel chambers, and (3) Merging and widening slideways.

The defendant's car is what is known as a "semiconvertable car" —that is, one in which the sides of the car are permanently boxed in—while the patent in suit is for what is called a "convertible" or "wholly convertible car," in that the entire side of the car can be opened. In the view which we take of the claims in suit, we do not consider this distinction material, although by reason thereof the two cars are different in general character and some of the uses to which they may be applied. The storage chambers in the defendant's car do not extend above the vertical windows in the deck roof of the car or below its main roof, as do the storage chambers claimed and shown in the patent in suit. The guide-ways in the defendant's car do not extend "in an irregular path from a point near the mouth of the storage chamber in close proximity to the outer and upper wall of such chamber," but they extend in a regular curve following the line of the construction of the original decked roof of the car. The single crook or curve in the grooves or guideways in defendant's car near the bottom of the storage chamber, is merely a construction introduced for the purpose of buttoning the two panels together, and thus giving an additional function to the operation of the panels; but it has, otherwise, nothing to do with the guiding or sliding operation of the panels. The devices for interlocking the panels and carrying them up into the roof in the defendant's car are radically different from those of the patent in suit. The defendant's car accomplished the objects of the O'Leary invention, but by means structurally different.

The question is as to the validity of the claims in suit and whether they are infringed by defendant's car. The first claim is as follows:

"In a convertible car, the combination with the deck roof, grooved roof-supporting ribs, and a series of inflexible slide-panels vertically movable in the rib-grooves; of a corresponding series of storage chambers extending from one side of the car approximately to the top of the deck of the car, substantially as described."

This claim cannot be sustained. Every element is found in the prior art, the inflexible panels in numerous patents and in models and existing structures; the storage chambers in Paul patent, No. 201,585, and Brill patent, No. 202,920, where flexible panels are shown stored side by side, as in the patent, and an inflexible panel like that of the patent, in Brownell patent, No. 247,608, and which, except for the lack

of a ceiling, would show a storage chamber. If there is any novelty in the claim, it consists in "a corresponding series of storage chambers extending from one side of the car approximately to the top of the deck of the car, substantially as described," which defendant does not have, as its chamber terminates practically at the bottom of the vertical walls, and in an enlargement of the size of the chamber to accommodate the larger panels in the abreast position.

The second claim is not materially different from the first. Its "upwardly and inwardly inclined slideways" etc., would read on to the construction of the Brownell patents, and the only novelty therein claimed is "storage chambers subjacent to the roof" which defendant does not use.

The dominant feature of the invention in suit is well expressed in claim four:

"In a convertible car, the combination with a pair of vertically-movable mutually-lapping panels; of a pair of panel-supporting ribs, each rib having intermediately of its lower and upper ends, separate slideways for the respective panels, which slideways, merge into each other and gradually increase in width and incline inwardly from the merging point toward the top of the car, substantially as described."

The expert for defendant is forced to admit that this construction is nowhere found in the prior art in such a combination. It is not found either in the hansom cab patent or in the Brill models or experimental structures. The Brown patent, No. 592,749, as defendant's expert says, illustrates "a different type of car construction; * * * is designed to be used in a little different relation to the movement of the sashes," and is not a pertinent reference. The widening and merging slideways introduce a novel structural modification and function. By means thereof the necessary freedom of oblique movement of the inflexible panels in their slideways is permitted when they are engaged and moving as one. An inspection of defendant's patent and of the car exhibited at the hearing, shows that this construction has been appropriated by defendant.

As to the sixth claim. It has already been shown in discussing defendant's car, that it does not have "a guideway extending in an irregular path from a point near the mouth of such chamber in close proximity to the outer and upper wall of such chamber approximately to the top of the deck" of this claim. Furthermore, this construction is shown in the Brownell patent.

Claims 7, 8, and 9 are invalid, because they show no invention in view of the prior art. The same means of engagement are shown in the Ball patent for the cab window, and in other patents. The specific means for locking and moving the sashes and panels together and supporting them in the chamber are not used by defendant. Its construction is an old one employed in the general field of the art of window fastening.

Claims 10, 13, and 14, broadly cover the combination which comprises the essentials of the invention of the patent in suit. The storage chamber is not limited as to its location or extension as in the first and second claims, and the grooves or guides in connection with

the merging and widening slideways of the patent are sufficiently claimed to protect the invention.

The conclusion reached is that the decree of the court below should be modified by dismissing the bill as to claims 1, 2, 6, 7, 8, and 9, and directing an injunction and an accounting as to claims 4, 10, 13, and 14, without costs to either party in either court.

Let a decree be entered accordingly.

Mandate will not issue until April 20th, as prayed. There is no reason why it should not issue in the usual form; the Circuit Court has abundant power to regulate operation of injunction so as not to inconvenience the public.