**ST. LOUIS CAR CO. v. J. G. BRILL CO. et al.**

No. 1741.

District Court, E. D. Pennsylvania.

Jan. 11, 1937.

Sundheim, Folz & Sundheim and Samuel D. Goodis, all of Philadelphia, Pa., and Cushman, Darby & Cushman, John J. Darby, C. Willard Hayes, and Gorham F. Freer, all of Washington, D. C., for plaintiff.

Hugh M. Morris and S. Samuel Arsht, both of Wilmington, Del., and Donald U. Rich, of New York City, for defendant.

KIRKPATRICK, District Judge.

This is a suit in equity for an accounting. In 1906 the plaintiff's predecessor and the defendant agreed in writing to take licenses under a patent—O'Leary Re-Issue No. 11,992—which had been in litigation, and to pay royalties into a common pool for division between them. The defendant refused to pay royalties upon certain cars manufactured by it, beginning in 1911, and the question involved in this suit is whether or not those cars embody the device of the patent, which had to do with means for pushing side panels and sashes of trolley cars up into the roof of the car so that a closed car can be converted into an open one.

There are three principal defenses—first, that the suit has abated and that there is now no party plaintiff; second, laches; and third, that the defendant's cars are not within the scope of the patent.

### 1. Abatement and Lack of Party Plaintiff.

In 1925, while this suit was pending, the plaintiff went through a reorganization. It had been incorporated in Missouri and it proceeded according to the general corporation law of that state. In order to be able to use its name for the new, reorganized company, it first changed its name to "Liquidating Car Company". It then assigned all its assets to a new company having the old name—St. Louis Car Company—which latter also assumed the liabilities. The new company was also a Missouri corporation. Having thus reorganized, the charter of the old company, Liquidating Car Company, formerly the original St. Louis Car Company, plaintiff in this case, was surrendered or forfeited (January 1, 1927) and that company ceased to exist.

None of the numerous counsel on either side seems to have known anything about the reorganization, and the cause proceeded for some eleven years without any recognition of the change upon the record. It was apparently discovered after the trial, in June and July, 1936. The plaintiff thereupon promptly filed a suggestion, putting before the Court the foregoing history together with certain statutes of the State of Missouri, and moving that the name of the plaintiff be changed of record and that the suit proceed in the names of its surviving officers and directors, or rather those of the Liquidating Car Company which was the original plaintiff under the name which it adopted for the reorganization.

The situation is rife with technical difficulties for the plaintiff, and the defendant, not unnaturally, seeks to take advantage of them. The plaintiff's difficulties are twofold.

■ First, the general rule is that when a complainant parts, pendente lite, with his interest in the subject matter of litigation he cannot further prosecute the suit. Pittsburgh S. & N. R. Company v. Fiske, 3 Cir., 178 F. 66, 67. The old company parted with its interest in this litigation when, under its new name of Liquidating Car Company, it assigned all its assets including the choses in action here involved to the new company. Federal Equity Rule 37, 28 U.S.C.A. following section 723, provides, "Every action shall be prosecuted in the name of the real party in interest * * *".

■ But Rule 37 also provides, "but * * * a party expressly authorized by statute, may sue in his own name without joining with him the party for whose benefit the action is brought". If he may sue originally he may also continue the suit. A statute of the State of Missouri, Mo.St.

Ann. § 904, p. 1183, provides, "when an interest is transferred in any action * * * the action shall be continued in the name of the original party [etc.] * * * or the court may allow the person to whom the transfer is made to be substituted in the action * * *". I agree that this matter is entirely procedural, but Rule 37 adopts, and directs the Federal Courts to follow, procedural statutes. Hence this action could be properly continued after the assignment in the name of the original party, the assignor. This disposes of the first difficulty.

The plaintiff's second difficulty is that the original party, a corporation, has ceased to exist, by reason of the forfeiture of its charter. The defendant argues that, even if the assignment did not abate the action, there is no longer any party plaintiff before the Court. However, the statutes of the State of Missouri, Mo.St.Ann. § 4561, p. 2007, provide that in such case the president and directors of the dissolved corporation shall have liquidating powers, including the power to sue for the recovery of debts. This part of the law is not procedural. "It concerns the fundamental law of the corporation enacted by the state which brought the corporation into being". Oklahoma Gas Company v. Oklahoma, 273 U.S. 257, 47 S.Ct. 391, 392, 71 L.Ed. 634. It will be recognized and administered by the Federal Courts. The result is that the real parties here entitled to carry on this litigation are the president and surviving directors of the original corporation which brought the suit.

I see no reason why they cannot be brought upon the record by suggestion, without resort to a supplemental bill or an original bill in the nature of a supplemental bill. Even if it were otherwise the liquidating managers could be formally brought upon the record by such means at any time. The question of laches does enter into this last consideration but that will be taken up next under the general defense of laches.

I hold that the defense based upon the abatement of the action and the want of a party plaintiff is not well taken.

## 2. Laches.

This defense is not purely technical, as was the one just discussed, but it does not reach the merits of the case.

The suit was brought in 1917. In 1923 it was automatically dismissed under a rule of this Court, no proceedings having been taken in it for three consecutive years. A month or two later, after full hearing and argument, this Court directed the order of dismissal vacated and the suit reinstated. Another three years elapsed before a decree in accordance with this ruling was entered. It was, however, finally done on February 23, 1926. Then came another period of ten years during which the sum total of proceedings in the case was (1) a half-hearted effort to define issues under Rule 11; (2) an amendment of the answer which was agreed to; (3) a counterclaim filed; and (4) a motion to dismiss, argued and denied.

I have gone through the docket entries and much of the voluminous files of correspondence offered in evidence in an effort to try to ascertain just why it took nearly twenty years to bring this case to trial. There was an immense amount of procrastination and quibbling, but it is only fair to say that a great deal of time was lost through circumstances over which the parties had no control. The deaths of some five lawyers, all closely connected with the case, are the milestones which mark its course. The judges have been more fortunate, but the picture is a depressing one from the point of view of the Court as well as that of surviving counsel, and the details will not be dwelt upon.

I think that there is no doubt that the period prior to February 23, 1926, must be diminished because on that day there was an adjudication by this Court that the suit was entitled to remain in full standing. But the ten years after that are still to be accounted for. There have been periods of time since 1926 when the Court, for various reasons, probably would not have been able to hear the case even if the parties had been ready. The plaintiff was certainly terribly remiss at the beginning. Shortly after the decree of February, 1926 was entered plaintiff's patent attorney died and, as I read the record, it seems to have required a year to engage a new one. After that there was an unbelievable amount of lost motion in negotiations relating to possible settlement and getting ready for trial. Then in 1930 the plaintiff's new counsel was otherwise engaged which prevented his going on with the case and that was followed by his prolonged illness.

At any rate, beginning in 1934 plaintiff seems to have been really pressing for

trial. But just at this point the defendant took its turn. The case was listed for trial successively in the spring of 1934, of 1935, and of 1936 and on each occasion it was continued at the request and on the motion of the defendant. The plaintiff cannot be held responsible for any delay since 1934 nor solely responsible for the time between 1926 and 1934.

On the whole, if I were required to make a guess at the proportion in which the parties contributed to the delay, I would say that the plaintiff was responsible for about 50% of it, and the defendant for about 30%, while the remaining 20% cannot be charged to either. However it is not a question of mathematics. The fact is that the defendant is in a substantial measure responsible for the delay which it now charges as laches on the part of the plaintiff. It is true "that the mere institution of a suit does not, of itself, relieve a person from the charge of laches, and that if he fail in the diligent prosecution of the action the consequences are the same as though no action had been begun". Johnston v. Standard Mining Company, 148 U.S. 360, 370, 13 S.Ct. 585, 589, 37 L. Ed. 480. But it is equally true that laches, invited or participated in by the defendant, will not be available as a defense.

In addition I cannot see that the lapse of time in this case has been prejudicial to the defendant. The single question involved is whether certain agreed structures are within the scope of the claims of the patent, read in the light of the opinions of the Circuit Court for the Northern District of New York, O'Leary v. Utica & Mohawk Valley Ry. Co., 139 F. 330, and the Circuit Court of Appeals for the Second Circuit in 1905 and 1906, 144 F. 399. There is no substantial dispute of fact. In Steaua Romana Societate v. Woodman, 2 F.Supp. 303, 313, this Court said, "All courts are in agreement that lapse of time alone will not bar the plaintiff from asserting his rights. If long continued it may carry with it a presumption of injurious consequences but when the circumstances show the absence of such prejudice the mere time elapsed will not be effective."

3. The Scope of the O'Leary Patent.

The claims of the O'Leary Re-issue held valid and infringed were claims 4, 10, 13 and 14. A number of others had been sustained by Judge Ray in the Circuit Court, but the Circuit Court of Appeals held them either invalid or not infringed. The Circuit Court of Appeals held that claim 4 contained the dominant feature of the invention, and it is perfectly clear that in so finding the Court had in mind the element described as "separate slideways for the respective panels, which slideways merge into each other and gradually increase in width and incline inwardly from the merging point toward the top of the car". The Court sustained claims 10, 13 and 14 by reading this feature into them, saying, " * * * the grooves or guides in connection with the merging and widening slideways of the patent are sufficiently claimed to protect the invention".

The defendant attempts to distinguish its structures, first for the reason that they do not have separate merging and widening slideways for the respective panels.

Now it is by no means certain that the Circuit Court of Appeals considered the feature of separate slideways as vital to the patent because that Court held claim 13 valid, and claim 13 calls for only a single inflexible panel. Obviously, claim 13 would be infringed by a single panel construction, and it would be quite absurd to say that to come within the patent such a structure would have to contain, in addition to the widening channel in which the panel moved, a perfectly useless separate channel or slideway merging with it. Of course, the widening of the slideway was the major consideration. That was what permitted the movement of an inflexible panel into the roof chamber and its storage therein.

However, construing the entire patent as meaning that if more than one panel is used they must move in separate slideways, it takes but a glance at the defendant's structures to see that they show separate slideways within any fair meaning of that term.

In the "77" blueprint there is practically no difference, except that the O'Leary patent drawing shows a little more definite separation of the slideways by means of a sort of projecting spur or ridge. In other words, in the patent the point of merger of the two slideways is not exactly at the offset, where the upper panel comes to rest, but a little higher up. In the "78" blueprint structure (which is that of the Kohler patent) the separation of slideways is not as definite, if we are to be literal in the use of words. But the two parts of the panel, as it goes up, take

different courses and, within a fair range of equivalency, it can be said that they move in separate slideways which merge and widen.

The other ground on which the defendant endeavors to distinguish his structures is that the panels are in tandem. He points out one sentence in the opinion of the Circuit Court of Appeals to the effect that O'Leary was the first to show a method of storage in an overhead chamber of inflexible panels arranged to slide abreast instead of tandem. As I understand the argument it is that if the defendant's structure is regarded as two inflexible panels then this statement puts it outside the scope of the patent because they do not slide abreast; if, on the other hand, it is regarded as a single panel, then it is not covered because it is flexible, not inflexible.

But I do not think that the mere fact that the structure consists of two parts arranged in tandem prevents the whole from being considered as "an inflexible panel" within the scope of claim 13. Flexibility is a relative term. It is to be borne in mind that the essence of this patent is the merging and widening slideways which permit inflexible panels to be stored in the roof space. When the claim speaks of an inflexible panel that term must be taken in the light of the real invention, and what it means is a panel so inflexible that it cannot be moved into the roof chamber for storage there, without the essential widening feature of the slideways.

I therefore find that the defendant's structures are within the scope of the patent and that royalties are due and payable upon the cars in which they have been used in accordance with the agreement of 1908.

### 4. Counterclaim.

The counterclaim was not seriously pressed and no argument was submitted upon it. I shall therefore dismiss it, without prejudice however to the defendant to revive the claim if I have misinterpreted its attitude.

### 5. Interest.

In view of its record in this litigation, the plaintiff cannot very well claim interest. The matter is largely discretionary and this case presents a situation in which it should be disallowed.

A decree may be submitted in accordance with the foregoing.