1900 WASHER CO. et al. v. CRAMER et al.

(Circuit Court of Appeals, Third Circuit. April 12, 1909.)

No. 8.

1. PATENTS (§ 157*)—CONSTRUCTION—READING CLAIMS AND SPECIFICATION TOGETHER.

No patented invention can be practically or fairly understood or explained if the language of the claims is entirely dissociated from the specification, and the claims and specification should be read together.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 235; Dec. Dig. § 157.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—WASHING MACHINES.

The Cramer & Haak patent, No. 829,631, for an improvement in wash-
ing machines consisting of means for applying mechanical power to
actuate an oscillating tub, was not anticipated and discloses patentable
invention. Also, *held* infringed.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the Middle
District of Pennsylvania.

For opinion below, see 163 Fed. 296.

Samuel O. Edmonds, for appellants.

Joseph C. Fraley, for appellees.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

GRAY, Circuit Judge. The decree appealed from in this case was
for an injunction and an accounting, in a suit against the appellants
(hereinafter called the defendants), for infringement of letters patent
No. 829,631, dated August 28, 1906, issued directly to the appellees
(hereinafter called the complainants). The defendants alleged lack of
patentable invention and noninfringement. Infringement was asserted
and adjudged as to claims 1, 3, 4, 5, and 6 of the patent. The struc-
ture in all five of the claims is the same structure, the elements cov-
ered being the same elements. Claims 3, 4, 5, and 6 covering details
somewhat more specific than claim 1, the discussion was confined sub-
stantially to the latter claim.

The invention is stated in the specifications to relate to improve-
ments in washing machines, and particularly to an oscillating tub, the
object in view being the provision of means for securing maximum
leverage and facilitating actuation of a tub and for providing for re-
siliency of movement of such a tub. Oscillating tubs were old in the
art. Their general structure was that of a tub with a spider or frame-
work at the bottom, so fastened as that its center should coincide with
that of the bottom of the tub. Through this center, a shaft or pivot
extended to a proper bearing upon a suitable framework, or support,
below the tub, and was made secure by proper stays or supports above
the bottom of the tub, the object being that the tub might turn easily
upon this shaft or pivot. The tub was oscillated by hand, the handle
fixed at the upper rim of the tub for that purpose. What was called
in the record the standard tub at the time of the issuance of the patent,
was fitted with a movable sleeve around the shaft or pivot directly be-
low the bottom of the tub, from which extended from opposite sides
short arms or levers, the ends of which were connected with the bot-
tom periphery of the tub by helical springs. The function of these
springs was to graduate or modify the oscillation, when the tub was
moved by hand, applied as above described, giving a retarding and
cushioning effect at either end of the oscillation, and by their resiliency
promoting the beginning of the return movement of the oscillation.
This tub being moved by hand, human intelligence could govern and
regulate the application of the power, so that the retarding and resilient
function of the springs might have play. The washer thus generally

described, is admitted to have been what was called a standard washer in use at the time of the issuance of the patent in suit.

So far as the record discloses to the contrary, there were at that time no washers except those oscillated by hand power, and in that respect the learned judge of the court below was not wrong in so stating. Whether he was strictly accurate in saying that there was "nothing in use but hand power" prior to the patent in suit, or thereby raised a false issue, is not material to our present consideration. The appeal is from the decree, and not from the opinion, of the court. It is certain that no successful power driven washing machines have been shown to have been in use, and the problem for solution at the time of the patent in suit may be fairly stated, as how to adapt "power"—i. e., mechanical power—to the oscillating of such a tub. In no other device had the power, generally, if not always, hand power, been applied otherwise than to the tub itself, either at its outer periphery, top or bottom, or to the bottom of the tub, between the periphery and the center. That this was so in the case of the so-called standard washer, so often referred to by the defendants (an excellent drawing of which, for purposes of illustration, is inserted in their brief), is apparent, and, as we have said, this washer seems to have been the one most approved in common use, with its helical springs graduating and softening the motion as above described.

It would seem obvious, that to apply mechanical power, however produced, merely in the manner in which hand power was applied, you must lose at once the benefit of the directing and governing intelligence by which the cushioning and resilient functions of the springs can be availed of. It needs no ocular demonstration to enable us to perceive, that the rigid uniform and prescribed motion incident to the use of mechanical power for actuating the washer, would result in the arc, through which the oscillation would proceed, being absolutely fixed, that the oscillation each way would be stopped with a jerk, and that the retarding and cushioning function of the springs would be unavailable. It is also apparent that this would be the result at whatever part of the tub the mechanical power should be applied. The merit of the patent in suit is, that the power is not applied directly to the tub, but to the end of a short lever attached to a sleeve surrounding the pivot at the bottom of the tub, and turning freely around it. From the end of this lever, and in line with it, a helical spring extended and was fastened to the bottom periphery of the tub, just as it was in the standard washer, above described. The power being applied to the short, rigid part of the lever, the tub was moved by its attachment to the end of the spring, which was in effect an elastic prolongation of the rigid lever. In the standard, hand-moved washer, the power was applied to the tub, and the tub moved the lever, while in the device of the patent in suit, the power is applied to the lever, which, through its spring attachment, moves the tub.

The movement caused by the mechanical power thus applied to the short arm fulcrumed on the pivot, is as rigid and unqualified, and as short and sudden in its stops and beginnings, as, in the case supposed, it would be in the application of the power directly to the tub itself;

but the happy thought of the invention is, that between this rigid, jerky movement of the lever thus fulcrumed, and the tub, is interposed the spring-like attachment extending from the lever to the outer periphery of the tub, so that during and after each movement of this rigid lever, through its prescribed course, we have a retarding and cushioning effect of the spring, together with a resiliency thereof to aid in the return movement. The arc of the oscillation of the tub, therefore, is not measured by that of the lever to which the mechanical power is applied, but the tub has a motion independent thereof, due to the switching function of the spring. It was not, therefore, a mere substitution of mechanical power for hand power, in the oscillation of the tub, but such an adaptation in the use of mechanical power, as would make available the function of the springs shown in the standard washer then in use, and avoid the jerkiness and rigidity of movement that would have been intolerable if the mechanical power was applied to the tub itself, as the hand power had previously been. It was this whip or switch-like movement of the helical spring, that the inventor availed himself of, in order to successfully solve the problem of a mechanical power actuated washing machine.

After the careful discussion of the prior art by the learned judge of the court below, it is only necessary to say that we agree with him in the opinion that there is nothing in that art that would negative patentable invention, in this successful adaptation of mechanical power for the movement of such machines. We should, perhaps, however notice the Wearne patent, No. 630,146, which was chiefly relied upon by the defendant, as such a suggestion of the prior art as would negative patentable invention in the device of the patent in suit. The Wearne patent is the standard washer, already referred to, with the spider-like arms collared on the pivot and turning thereon, with the helical springs extending from the ends of said levers to the periphery of the tub and fastened thereto. But the power is applied to the tub, and not to the lever, and is applied by hand. Moreover, in the Wearne device, there are pins attached to the frame, which check the motion of the levers and allow the power to be used in stretching the springs, thereby promoting their resiliency. The springs are inert until the lever strikes the pin, and the power is then used to move the springs alone. This did not solve the problem, nor did it suggest, in any way that we can see, the device of the patent in suit, by which the power is applied to the lever and the switch-like movement of the spring is used in oscillating the tub.

The first claim of the patent in suit is as follows:

"1. In a device of the class described, the combination with a pivotally mounted tub of a lever fulcrumed on the pivot of said tub, means for actuating said lever, and a spring connecting the lever with said tub."

The combination or description of the standard washer, or of this Wearne tub, can be read it is contended by defendants' counsel into this first claim. This may be true, if we stick in the bark, by looking at the language of the claim, dissociated from the specifications; but no invention can be practically or fairly understood or explained, if such dissociation is absolutely adhered to. As we have already shown,

the element described in the first claim, as "means for actuating said lever," must not be taken to be any means, such as impracticable hand power applied to the lever, but the efficient practical means described in the specifications. Reading the claim and the specifications together, the invention of the patentee was clearly such an application of mechanical power as would oscillate the tub with all the advantages afforded by the resiliency and retardation of the springs of the standard washer preserved. Such an adaptation, and such a result, are shown nowhere in the prior art, and could not have been achieved by the mere substitution of mechanical power for hand power, as it was applied in the standard washer, the Wearne machine, or in any of the devices of the prior art. It was an application of power in a different way and upon a different principle; and this would be true, even if the power applied, directly or indirectly, were hand power.

We are of opinion that, notwithstanding the prior art, the device of the patent in suit involves patentable invention, and we turn to the question of infringement. We find that defendants' structure, in use by it at the time of the filing of the bill in the court below, is covered by the first claim of the patent in suit, both literally and in substance and meaning, when interpreted by the specifications, in connection with which it must be read. The defendants' machine is in terms a combination, with a pivotally mounted tub, with a lever fulcrumed on the pivot of said tub, means for actuating said lever, and a spring connecting the lever with said tub. We also have embodied in defendants' device the principle of the invention of the patent in suit, in that power is applied, not to the tub, but, to a lever fulcrumed on a shaft, communicating motion to the tub by the interposition of a helical spring attached to the end of the short lever, and extending to the bottom periphery of the tub to which it is fastened. The lever thus fulcrumed, with its spring extension, is a driving mechanism nowhere found in the prior art, and is of the very essence of complainants' invention. This element is clearly appropriated in defendants' machine.

But defendants claim that in addition to this elastic driving lever, they have twin cushioning springs in their structure, connected with the movable frame or spider which carries the tub, and with the base; that these are struck by the lever as it nears the end of each oscillation, thereby furnishing additional elastic buffers or cushions, to aid in checking the momentum of the tub. Having these cushioning springs so placed, defendants use a weaker spring extension to its lever. This, however, is clearly a matter of degree, and the function of the spring lever is the same as that of the spring lever in the device of the patent in suit. These cushioning springs could be removed, as was done by defendants' expert, with no resulting change in the operation of the tub, except what would be produced by the weaker action of the driving spring. These cushioning springs were a mere addition to the complete structure of the complainants' device. They supplemented the cushioning function of the driving spring, but did not dispense with it. The defendants do not substitute anything for the patented device, but employ it in its entirety, and then merely add

elements which, without destroying its functions, supplement or partake of them. As remarked by the learned judge of the court below:

"How can it be said that the combination of that which is not an infringement with that which is, saves the result?"

Referring to and adopting the clear and elaborate opinion of the court below upon the question of infringement, its decree is hereby affirmed.