WILLIAM R. THROPP & SONS CO. v. DE LASKI & THROPP CIRCULAR WOVEN TIRE CO.

(Circuit Court of Appeals, Third Circuit.    August 9, 1915.)

No. 1928.

1. PATENTS &⇒328—VALIDITY AND INFRINGEMENT—TIRE WRAPPING MACHINE.
    The De Laski and Thropp patent, No. 1,011,450, for a tire wrapping machine for wrapping automobile tires before vulcanization, *held* the joint invention of the patentees, not anticipated, and to disclose invention; also infringed.

2. PATENTS &⇒241—INFRINGEMENT—ADDITIONAL FUNCTION OF PART.
    Infringement is not avoided by the fact that one element of the alleged infringing machine performs an additional function, where it also performs the function of the like part in the patented machine in substantially the same way.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 380; Dec. Dig. &⇒241.]

3. PATENTS &⇒35—EVIDENCE OF INVENTION—PRACTICAL SUCCESS OF DEVICE.
    That the art presented problems, and that the device of a patent solved them, and has gone into general use, and produced new and economical results, speaks for its inventive character.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 39; Dec. Dig. &⇒35.]
    Utility, extent of use, and commercial success as evidence of invention, see note to Doig v. Morgan Mach. Co., 59 C. C. A. 620.]

4. PATENTS &⇒92—PERSONS ENTITLED TO PATENT—JOINT INVENTORS.
    A patent for an invention claimed to be the joint invention of two, when in truth it is the separate invention of but one, cannot be issued to both, or, if issued, is void as to both; but when the patent is for a combination of mechanical elements as a whole, and not for its separate parts, and some of such parts were the invention of one and some of the other, or when one had a general conception of a part, but the other devised the mechanism to carry out such conception, they are entitled to a patent as joint inventors.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 124; Dec. Dig. &⇒92.]

Appeal from the District Court of the United States for the District of New Jersey; Thos. G. Haight, Judge. •

Suit in equity by the De Laski & Thropp Circular Woven Tire Company against the William R. Thropp & Sons Company. Decree for complainant, and defendant appeals. Affirmed.

For opinion below, see 218 Fed. 458.

T. Hart Anderson, of New York City, for appellant.

E. Clarkson Seward, of New York City, for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This is an appeal from the decree of the District Court of the United States for the District of New Jersey, holding valid and infringed letters patent No. 1,011,450, issued on December 12, 1911, to the De Laski & Thropp Circular Woven Tire Company, the complainant, upon the assignment of Albert De Laski and Peter D. Thropp, the applicants. De Laski & Thropp C. W. T. Co. v. Wm. R. Thropp & Sons Co. (D. C.) 218 Fed. 458. Infringement is denied, and the validity of the patent is attacked, first, for want of invention, and second, upon the claim that invention, if found to exist, is not the joint invention of the patentees, but is the separate invention of one of them.

[1] The patent is for a tire wrapping machine, to be used in the art of making automobile tires. Something of the art and two of its problems, as well as the structure and function of the machine invented, must be known before the questions in this controversy can be stated and considered.

Before the invention of the machine of the patent in suit, one of the accepted processes in the manufacture of automobile tires was the open cure process. The tire, composed of fabric and plastic rubber, was built up on a core or iron ring designed to give proper form to its interior. Mold sections or iron pressure rings were placed upon its exterior sides, and were designed to impart to its margins their well known clincher edges. The tire was then compressed into shape under great pressure, and being so compressed without heat or chemical action, the process was known as the "cold press." Upon removal from the cold press, the tire had a tendency to expand. It therefore became necessary to restore the pressure of the molds upon the shaped tire before subjecting it to the next and final process of vulcanization.

The molds did not cover the outer periphery or tread of the tire. That part was confined by spirally wrapping the tire and molds with strips of muslin or other fabric, which, being porous, admitted moisture and heat. The tire thus confined was then subjected to a vulcanizing process, by which the rubber was converted from its plastic into the tough elastic condition generally observed in finished automobile tires.

In order that the molds might properly and exactly conform to the shape the tire acquired in the cold press and to prevent expansion during vulcanization, it was necessary that the molds be tightly compressed upon the tire while being wrapped. This compression was customarily attained by means of bolts or clamps, and the tires were wrapped by hand, the compression and the wrapping constituting two separate steps in the manufacture of the tire. There was therefore presented by the

art, two problems, one to find a method to obtain the necessary compression otherwise than by bolts and clamps, and to find a method by which the tire might *at the same time* be wrapped more firmly, uniformly and speedily than by hand.

Tire wrapping machines are old in the art. It is contended by the complainant, however, that a tire wrapping machine which dispensed with the preliminary compression by bolts and clamps, and itself exerted the requisite compression at the time the tire was being wrapped, was first produced under the patent in suit.

The structure of the patent in suit may be described in three parts. The first is a table supported by several legs. On its flat surface are mounted three or more rollers vertically placed. These rollers are not positively driven, but are so disposed as to retain the annular tire within the space which they surround. Their function is to prevent the horizontal displacement of the tire in its rotary movement. Mounted upon the table are three or more rollers horizontally disposed, which are positively driven by shafts descending diagonally towards the center and base of the table, where they are engaged by gears from which they receive their power. Upon the second set of rollers thus positively driven, rests the tire, and by these rollers the tire is given its rotary motion when being wrapped. This is the first part of the patented machine.

The second part is its superstructure, the shape of which suggests a huge letter copying press. It consists of a very heavy tripod, suspended between supports built upon and extending above the table. Upon the apex of the tripod are means to exert downward pressure of the entire body, very similar to the wheel and screw used for that purpose in a letter copying press. Upon the lower extremities of the tripod are rollers. These form the third set of rollers. Like those used to prevent horizontal dislodgment, these rollers are not positively driven. Their function is to prevent vertical dislodgment, while the function of the whole superstructure is the compression of the molds upon the tire by pressure from the tripod exerted by the means provided as well as by its own weight, *at the time* the tire is being wrapped. This part of the machine disposes of the necessity of clamping the molds to the tire by bolts before wrapping.

The third part of the machine is that which performs the function of wrapping. It consists of an annulose structure with its vertical axis at right angles to the flat surface of the table and likewise at right angles to the horizontal axis of the annular tire. Cut in the inner curve of this metallic annulus is a race-way, and in the race-way is what is termed a shuttle, but what in fact is an interior annular structure, which revolves and speeds itself around and within the grooves of the race-way. Upon the shuttle is attached a bobbin with a spool of muslin. When the tire is horizontally placed upon the surface of the table, it gains admission within the vertical circle of the annular shuttle by means of a gate, which may be opened and closed. When this is done, the tire encircles the shuttle and the shuttle encircles the tire, and they bear the same relation to one another as links of a chain. When the muslin from the bobbin is attached to the tire and the machine started,

several things happen. The positively driven rollers rotate the tire upon the flat surface of the table. The vertically disposed rollers prevent the tire dislodging horizontally, and the upper set of rollers connected with the tripod prevent the tire dislodging vertically. Thus the first set of rollers gives motion to the tire, and the second and third set of rollers keep the tire in place, while the tripod, with its weight of many hundred pounds and means to exert additional pressure, compresses the molds upon the tire as they are being wrapped. The annular shuttle revolving in its race-way at a right angle to the tire as it is horizontally moved in its circular course upon the table, wraps the tire with the fabric fed from the bobbin, and wraps it tightly by means of the tension exerted by a tension device connected with it. When the tire is entirely wrapped, the gate of the shuttle is opened and the tire removed from the table, ready to be vulcanized. This part of the machine disposes of the disadvantage of wrapping tires by hand.

The structure and the function of the defendant's alleged infringing machine are so nearly identical with those of the machine of the patent in suit, that if the patent is found valid, infringement must exist.

The only substantial difference between the two machines is, that in the defendant's machine more than one strand of fabric is wound at the same time, and the upper rollers are positively driven. The contention of the defendant is that its upper rollers connected with the tripod superstructure, have a function different from that of the rollers similarly situated in the complainant's machine; that the function of its upper rollers is to assist the under rollers to rotate the tire, made necessary by the double winding feature of its machine; that the function of compressing the tire in its molds, when being wrapped, is not present in its machine; and that its mechanism is not employed to prevent vertical dislodgment of the tire, because the double winding feature of its device prevents such dislodgment. It is upon a difference of function rather than upon a difference in structure that the defendant bases its defense of non-infringement.

[2] Our view of the testimony and our findings of fact upon the issue of infringement are in accord with those of the learned trial judge. We are satisfied that the evidence discloses that the upper rollers, weight and mechanism of the superstructure of the complainant's machine perform the two-fold function of preventing vertical dislodgment and the expansion of the tire in the process of being wound. If the upper rollers and the superstructure of the defendant's machine perform the same functions, it is certain that they perform them in substantially the same way, and the fact that the upper rollers of the defendant's machine may perform an additional function in assisting the lower rollers to rotate the tire, does not negative infringement. Powell v. Leicester Mills Co., 108 Fed. 386, 47 C. C. A. 416 (C. C. A. 3d Cir.); Washer Co. v. Cramer, 169 Fed. 629, 95 C. C. A. 157 (C. C, A. 3d Cir.).

In discussing the pressure function of the mechanism of the defendant's machine, the learned trial judge said:

"The evidence demonstrates that the actual pressure exerted on the upper set of rollers of such of the defendant's machines in actual use as were discussed in the evidence, *is greater* than that exerted on the plaintiff's

machines in actual use, and much more than necessary to insure a proper feed. From this it appears the upper set of rollers of the defendant's machine are capable of performing the same functions as those of the plaintiff's. If the only function of the upper set of rollers of the defendant's machine is to assist in the feeding (rotating) of the tire, it is difficult to see why it has been found necessary by those actually using the machine to employ so great a pressure. During the progress of the trial, I examined in company with counsel of the respective parties and some of the witnesses, certain of the plaintiff's and defendant's machines which were in actual use. One of the latter was being and had been for some time used *without* the upper set of rollers being positively driven, because the mechanism for driving them had become broken. When the tire was placed in this machine for wrapping, the upper set of rollers was pressed down upon it and practically the same pressure used as on the machine with the driven rollers. The only evidence as to whether this machine worked properly is to the effect that it did."

Under the claims of the patent in suit, the pressure of the superstructure of the machine performs functions essential to the purpose for which the machine was invented, namely, the prevention of vertical dislodgment and the compression of the tire in its molds at the time of wrapping. From the evidence, as well as from the observation of the learned trial judge, it is equally clear that the mechanism of the superstructure of the defendant's machine performs precisely the same functions and in substantially the same way, and therefore, if the patent is valid, infringement exists.

Upon the two defenses directed to the validity of the patent, the first is that the machine of the patent lacks invention, that it is the product merely of mechanical skill, and that it contributes nothing to the art.

In citing machines claimed to be anticipations of the machine of the patent in suit, the defendant has not restricted itself to the art of wrapping automobile tires, but maintains, with some force, that the art to which the machine of the patent in suit is claimed to be a contribution, is that of wrapping any annular body, the problem of winding an annulus or an unbroken circle being in every instance similar.

Letters patent No. 344,273, issued to D. Heer, June 22, 1886, presents a mechanism, which, in our opinion, more nearly approaches an anticipation of the invention of the patent in suit than any other cited. The invention comprises a machine for wrapping small rings of from one to two inches in diameter with fibrous strands, such as are used on window curtain cords. The machine is a very small device. It has one feed wheel positively driven. The annular body or ring to be covered rests upon the feed wheel, its periphery bearing against an outwardly extending flange or guard. The ring is held in position by a wheel, upon which pressure is exerted by a spring. The shuttle rotates in a bearing and carries a bobbin or spool which wraps the thread or strands about the ring. It is contended that the Heer machine contains everything that is contained in the machine of the patent in suit, stress being laid upon the presence of the upper pressure wheel, employed, as it is contended, for exactly the same purpose as the superstructure of the machine of the patent in suit, and that the differences between the machine of the patent in suit and the machine of the Heer patent are merely in size and weight and multiplication of parts. The differences between the two machines are readily seen

226 F.—60

when considered with respect to the difference in the annular bodies intended to be wrapped by them. The Heer patent is silent as to the purpose of the upper wheel, but the inventor testified that it was to produce proper frictional engagement with the body to be wrapped so as to make it revolve. In the machine of the Heer patent, no mechanism was supplied or intended to hold together and compress the several parts of an annulus, such as the core, the tire, and the molds. The pressure exerted by the upper wheel was intended to be applied to a solid and unbroken annulus, and merely to produce frictional engagement. It did not hold together separate parts of an annulus. The mere enlargement of the Heer machine to a size sufficient to wrap an automobile tire would not produce a machine that would wrap and at the same time hold together a tire and its core and molds. The reconstruction of the Heer machine in order that it might simultaneously compress and wrap a tire would involve invention equal to that claimed by the patent in suit. We are therefore of opinion that the invention of the Heer patent is not an anticipation of the invention of the patent in suit.

Letters patent. No. 801,287, granted to Whittlesey, 1905, for a machine for taping coils, and letters patent No. 351,583 to Dixon, 1886, for a machine for wrapping coils or bundles of wire, embody many of the features of the claims of the patent in suit, but there is absent in the machine of each patent, the essential and efficient feature of the superstructure with its function of exerting pressure claimed by the patent in suit.

Letters patent 337,230 to Bean, 1886, and letters patent 379,754 to Bagley and Hainsworth, 1888, were granted for machines for rolling car wheels. They were not introduced in evidence as anticipations of the patent in suit, as they were neither adapted nor intended to wrap a tire or other annular body. They were introduced to show that certain of the pressure elements employed by De Laski and Thropp are found in another art. This may be true, but it does not destroy the patentee's claim to an invention of a combination of those and other elements.

Letters patent No. 840,642 to Miller, 1907, are for a machine for wrapping tires, and were confidently cited as an anticipation. The machines of the two patents are radically different. The machine of the Miller patent has no superstructure to exert vertical pressure for the double functions which appear throughout the specifications and claims of the De Laski and Thropp patent as its essential and cardinal principal. It not only lacks these functional elements, but is so differently constructed as to indicate that Miller had no conception of them.

The machine for wrapping tires as early as 1905 in the plant of the Goodyear Company was cited as an anticipation. The machine of the Goodyear Company possesses many features in common with the machine of the patent in suit, acquired alike from the prior art. The Goodyear machine, however, differs in numerous features from the machine of the patent in suit. There is absent the superstructure means for exerting pressure on the tire and molds while being wrapped, which means is the important feature of all the claims in suit.

[3] We are of opinion that the machine of the patent in suit consists of much more than refinements in mechanism. Certain features of the structure and certain of the elements of the De Laski and Thropp machine are found here and there in the prior art. It may be that De Laski and Thropp knew of their existence, and reached back into the art and appropriated them to their own use, but in employing these old features and elements, the patentees used them in a new combination and produced by that combination a new and useful result not theretofore attained. Wrapping an annulus by a mechanism of an annular shuttle was old, but wrapping an annulus that was made up of several loose and separate parts which had to be compressed and held tightly together while being wrapped was a new problem, and we find nothing before the invention of the patent in suit that either attempted or accomplished its solution. Whether such mechanism constituted an inventive advance in the art depends less upon the prior use of the separate elements than upon the new and useful results that have been produced by employing those elements in a combination not before made. The fact that the art presented problems and that the device of the patent solved them, as well as the fact that the device has gone into general use and has produced new and economical results, speaks for its inventive character. Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486, 23 L. Ed. 952; Magowan v. New York Building Co., 141 U. S. 332, 343, 12 Sup. Ct. 71, 35 L. Ed. 781; Potts v. Creager, 155 U. S. 597, 609, 15 Sup. Ct. 194, 39 L. Ed. 275.

Each claim of the patent attacked in this suit is for a combination of elements. No claim is for a separate element in the combination. In each combination claim is contained the elements comprised in the superstructure of the machine, the double function of which is the prevention of vertical dislodgment of the tire and the compression of the tire under great weight while being wrapped. As each claim is for a combination, and as these elements are in each claim, we approve the conclusion of the learned trial judge in holding each claim in suit to be valid.

[4] So much stress has been laid upon the defense, that if patentable invention be found in the patented device, it was not the joint invention of the patentees but was the separate invention of one of them, we feel inclined to state our conclusions at a length greater than the substance of the contention warrants.

A patent for an invention claimed to be the joint conception or invention of two, when in truth it is the separate invention of but one, cannot be issued to both, or, if issued, is void as to both. Royer v. Coupe (C. C.) 29 Fed. 358; Welsbach Light Company v. Cosmopolitan Gas Light Company (C. C.) 100 Fed. 648; Stewart v. Tenk (C. C.) 32 Fed. 655; De Laval v. Vermont, 135 Fed. 772, 68 C. C. A. 474. It is, therefore, a legal defense in a suit upon a patent for a joint invention, to show that the invention for which the patent was issued was the conception or invention of but one of the patentees. Applying the general principle of this defense to the case under consideration, it is claimed by the defendant that the subject matter of the patent in suit was not the joint invention of De Laski and Thropp, but was the sole invention of Thropp; that the conception was his,

and that De Laski was employed by him as a draftsman simply to design and mechanically develop his inventive ideas.

If there is merit in this defense, it must be found in the testimony of Thropp, who testified concerning the development of the invented machine and the measure and character of the contribution to the invention made by De Laski and himself. Thropp said that he designed most of the machine, and De Laski designed some of it; that most of the machine was his, that De Laski designed the tension on the bobbin, placing at angles the shafts carrying the pinions, and the shape of the tripod which produced the pressure. He claimed, however, that the idea of exerting pressure upon the tire when being wrapped was his own.

In propounding and answering questions that bear upon De Laski's and Thropp's contributions to the invention, the word "designed" was uniformly used by Thropp and counsel, but in using that word, it is evident that they meant, "conceived" or "invented," and that none used the word in the sense in which it is used by draftsmen. The testimony shows clearly that De Laski invented the means for driving the lower set of rollers that rotate the tire; the tripod to which was attached the upper set of rollers and which exerted the pressure conceived to be required; and the tension on the bobbin.

The subject matter of the patent in suit is a machine which is a combination of mechanical elements. The thing sought to be accomplished by this combination is the wrapping of a tire when the tire is set in its molds and held there under great and continuous pressure.

The claims of the patent which are in litigation are not for the elements of the machine but are all directed to the machine as a whole. The driven rollers supporting and rotating the tire while it is being wrapped are present as elements in every claim in suit. Thropp conceived the idea that the tire should be rotated, and De Laski invented the means incorporated in the machine for the purpose of driving the lower set of rollers, which rotated the tire. Thropp conceived the idea of exerting pressure upon the tire and its molds when being wrapped, and De Laski invented the tripod support for exerting the pressure during that operation. This feature is also an element in each of the claims in suit.

Before tires were subjected to the vulcanizing process, they were required to be wrapped with a porous fabric and to be tightly wrapped. De Laski improved the bobbin and invented the means for exerting tension on the wrapper as it was wound around the tire and its molds. The successful accomplishment of the things intended to be done by the machine, depended largely upon the tightness with which the tire was wrapped, and the efficiency of the machine depended correspondingly upon the tension device "designed" or invented by De Laski, which appears in each claim in suit, except possibly claim 20. None of the elements attributed to De Laski is the subject of an independent claim, nor does anyone constitute an independent invention separate and distinct from the invention as a whole. A tire wrapping machine without means to rotate the tire and molds and without means to hold the same compressed together and in place while they are being wrap-

ped, and without a tension on the bobbin to tighten the wrapping tape, would not be a tire wrapping machine, or at least a tire wrapping machine of the comprehensive type which De Laski and Thropp sought to make and which together they developed.

In a machine containing as many elements as this one, it is not to be thought nor by the law required, that the inventive conceptions of two inventors shall develop simultaneously. One may conceive a general or imperfect outline of an entirely novel thing, which, without the conception of another developing it and giving it body, might never amount to invention; but if the conceptions of one supplement and complement the conceptions of the other, the result might be invention and therefore joint invention. "When a claim covers a series of steps or a number of elements in a combination, the invention may well be joint, though some of the steps or some of the elements may have come as the thought of but one." Quincey v. Krause, 151 Fed. 1012, 1017, 81 C. C. A. 290; American v. Wood (C. C.) 189 Fed. 391, 395. In this case we do not have to resolve doubts in favor of the patent under the rule which requires unquestionable proof that joint patentees are not joint inventors. United Shirt & Collar Co. v. Beattie, 149 Fed. 736, 741, 79 C. C. A. 442; Butler v. Bainbridge (C. C.) 29 Fed. 142, 143; Priestley v. Montague (C. C.) 47 Fed. 650, 651. We are entirely satisfied that while Thropp first conceived the idea of wrapping a tire under pressure, his idea was in part developed by De Laski, and that De Laski's ideas and contributions were so essential and were so related to the conception of Thropp that, without them, Thropp alone would not have produced the invention for which the patent was issued. We are therefore of opinion that the invention is a joint invention and is valid.

The decree below is affirmed.