KRAUTH V. AUTOGRAPHIC REGISTER CO. 199
(285 F.)

KRAUTH et al. v. AUTOGRAPHIC REGISTER CO. et al.*

(District Court, D. New Jersey. February 18, 1921. On Reargument July 27, 1921.)

1. Patents ⬧328—Reissue 14,189, claims 6, 11–15, for autographic register, held valid and infringed.

The Krauth reissue patent. No. 14,189, claims 6, 11–15, for autographic registers, the essential element of which was a pin or detent arranged to enter apertures in the several strips of paper to keep them in exact register, held valid and infringed.

2. Patents ⬧247—Addition of new function to combination is not defense against infringement.

The addition to a patented combination of an additional function, not performed or claimed by the patented invention, is not a defense against the charge of infringement.

3. Patents ⬧141—Additional invention disclosed but through inadvertence not claimed, may be covered by reissue.

If an inventor has produced and described in his specification two or more inventions, which may be secured in one patent, but covers only one

⬧For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Decree reversed 286 Fed. 470.

of them by his claims, his patent is inoperative as to the other invention, and, if his failure to claim that was due to inadvertence, a reissue may be granted.

4. Patents ⬅144—Commissioner's decision in granting reissue not reviewed, unless error is manifest from record.

The decision of the Commissioner of Patents, in granting a reissue, that the failure to claim an invention disclosed by the specification was due to his inadvertence or mistake, will not be reviewed, unless the matter is manifest from the record.

5. Patents ⬅141—Varying and enlarging in reissue specification description in original is not "new matter."

It is not "new matter" in a specification, within the meaning of the provision of Rev. St. § 4916 (Comp. St. § 9461), for reissue patents, to explain in a reissue specification the operation of a device which in the original was only described, to state a new use of the invention shown in the original, or to vary and enlarge the description of anything inadequately described in the original.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, New Matter.]

6. Patents ⬅138(1)—Application for reissue within two years is ordinarily due diligence.

Ordinarily, a patentee has two years after the issuance of the patent in which to apply for a reissue, before it will be presumed he has abandoned the unclaimed invention to the public, though special circumstances may lengthen the time within which he may apply, or may show abandonment within a shorter time.

7. Patents ⬅26(1)—Invention cannot be defeated by selecting all elements from different prior patents.

Invention of a combination cannot be defeated because it is possible to select from prior patents the several elements entering into the patented combination, and claim, after the combination is known, that it required only mechanical skill to combine them.

On Reargument.

8. Patents ⬅148—Reissue patentee is estopped to claim infringement by party relying on apparent abandonment.

Where a patentee under an original patent of narrow claims secures a reissue with broad claims, or where the original claims are broad and a reissue is secured with narrow claims, from which the broad claims have been omitted, and a second reissue then secured containing both the narrow and broad claims, the patentee is estopped from enforcing the broad claims against a defendant who has spent money and built up a business in the belief that the patentee had abandoned his broad claims to the public.

9. Patents ⬅148—Reissue patentee is not estopped to assert infringement of claims narrower than unabandoned original claims.

Where a patentee, whose patent contained broad claims, secures a reissue containing all of the broad claims of the original and other narrow claims, there is no abandonment which can estop him from enforcing his reissue patent against a defendant, who had built up a business between the original issue and the reissue.

10. Patents ⬅160—Claims and specifications construed in connection with drawings.

If it is necessary that the particular shape of the pins which form one element of the patented invention be shown, the claims and specifications, which are silent as to such shape, must be construed in connection with the drawings which disclose the shape.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

11. Patents ⚖238—Omission of old element held not to defeat infringement.

Where the function of a writing table as a guide was part of the combination of an autographic register improvement, and was mentioned in the specification and expressly recited in a claim not in issue, but omitted from all other claims, and was old in the art, infringement is not avoided by the fact that defendant's table does not perform the function.

In Equity. Suit by Albert Krauth and another against the Autographic Register Company and another to restrain the infringement of a patent. Decree for complainants against the named defendant.

Wood & Wood, of Cincinnati, Ohio, for plaintiffs.
Justus Sheffield, of New York City, for defendants.

DAVIS, Circuit Judge. This is a suit brought by the plaintiffs against defendants for the infringement of claims 6, 11, 12, 13, 14, and 15 of letters patent No. 14,189, reissued to Albert Krauth, August 29, 1916, on application filed May 1, 1916. One-half interest in this patent was on September 27, 1916, assigned to Christian Benninghofen, the other plaintiff. The original patent, No. 1,122,508, was issued to Albert Krauth, December 29, 1914. In this reissue patent, the first 10 claims were contained in the original patent, and the rest of the claims, 11–17, are new.

The invention relates to manifolding machines or autographic registers, in which a plural number of webs of paper in superposed arrangement, for manifolding, usually containing pre-printed forms, as bills of lading, sales slips, and the like, are fed and exposed over a writing table within a margin frame area, and are withdrawn from the machine in their form lengths and severed from the web across a tearing blade.

The patentee alleges that machines of this class have been equipped with various forms of feeding and measured stroke delivery devices for extracting the webs in definite lengths corresponding to the length of form, but that their operation required careful manipulation and frequent adjustment of the several webs relatively within the machine to bring their printed data into registry and alignment accurately one over the other. With his invention, Krauth claims to have avoided the difficulties encountered in other machines whether the paper is withdrawn by mechanical means or manually. This he does by means of certain metallic projections, which enter from beneath apertures or round holes made in each side of the web opposite each other as the holes arrive at the projections when the web is being withdrawn from the machine. These projections, called by Krauth "detents," and by defendant "pins," are located at the delivery end of the table of the machine, and are yieldingly urged by springs toward the web for successively entering the apertures as the web is withdrawn.

The alleged new element in the Krauth patent, upon which the validity of his invention rests, are the "intercepting devices," "detents," or "pins." It is the presence of these on the defendants' register of which complaint is made.

There is no evidence, so far as I have discovered, that the defendant Shoup has either manufactured or sold in his individual capacity any of the registers complained of. Consequently the bill as to him

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

will be dismissed and reference to the defendant hereafter will be limited to the corporate defendant.

[1] In ordinary cases the responsiveness of defendant's device to the terms of a claim settles the question of infringement. In claims 13, 14, and 15, the essential elements of an autographic register, which are necessary to the operation of pins, are defined. These elements are the adaptation of two pins or detents arranged crosswise the table to enter the two apertures arranged crosswise the superposed strips. A register having the pins so defined infringes these claims, whether or not the pins have the particular function of preventing transverse disalignment, which the defendant claims is the sole function of the pins in its machine.

In the defendant's machine, the pins successively enter the apertures as the web is withdrawn. They are yieldingly urged toward the web, and the pins normally prevent the web from being drawn over the table, and have to be withdrawn from the apertures before the web can be withdrawn. In performing these functions the defendant's device is also responsive to the other claims, 6, 11, and 12, in issue. The pins of the defendant's device, therefore, perform the functions ascribed to\them in the Krauth patent, in aligning the web in writing position on the table, and in maintaining relative registry of the several superposed webs while being drawn over the table.

In addition to these functions, the pins of defendant's device may also have the function of preventing lateral disalignment. I am convinced that the prevention of lateral disalignment is not the sole function, as defendant contends, of the pins of its device, and that the detents of Krauth's machine had and performed all the functions had and performed by the pins of defendant's machine. Though Krauth mentioned the function of preventing lateral disalignment, he did not claim it. On page 2, lines 61–67, of the specification, he says:

"The pins also correct and prevent lateral displacement when severing the sheets across a tearing blade. This is of great practical importance in certain classes of work, where the manifold device must uniformly produce identical copy, if it is to be used in place of manual clerical work."

And again on pages 3, 11, 70–79, he says:

"In providing a plural number of pins or fingers in a spaced relation laterally of the paper, both move as barriers across the path of the paper, and assume a definite and fixed location with respect to the writing table and different parts of the machine, as they enter and pass through the apertures, they will shift the paper either longitudinally or laterally, or in a direction to bring the apertures in absolute registry over the pins, should the sheets become slightly displaced as to their registry and alignment."

[2] Even if the prevention of lateral disalignment, claimed to be the chief function of defendant's device, be considered a new function performed by defendant's device, but neither claimed nor performed by Krauth's machine, infringement is not avoided, for the addition of a new function to a combination which does not affect the performance of the function of the patent is not a defense against the charge of infringement. Powell et al. v. Leicester Mills Co. et al., 108 Fed. 386, 47 C. C. A. 416; Thropp & Sons Co. v. De Laski & Thropp Circular Woven Tire Co., 226 Fed. 941, 141 C. C. A. 545; Miller et al. v.

Walker Patent Pivoted Bin Co., 139 Fed. 134, 71 C. C. A. 398; Washer Co. v. Cramer et al., 169 Fed. 629, 633, 95 C. C. A. 157.

Even though the detents and pins in the respective devices have and perform the same functions, the defendant maintains that it must prevail because of the invalidity of the patent, for the reasons that the reissue was allowed contrary to law and the rules of the Patent Office, and the Krauth patent was anticipated and did not contain invention.

[3] Krauth set forth the grounds for the reissue in the affidavit accompanying his petition. He stated that the patent was inoperative, for the reason that the specification thereof was insufficient, and that the errors which rendered the patent inoperative arose by inadvertence. If an inventor has produced and described in his specification two or more inventions, which may be secured in one patent, but covers only one of them by his claims, then his patent is operative only as to the one claimed. Under such circumstances, if the failure to claim all his invention disclosed was due to inadvertence, a reissue may be granted.

[4] The Commissioner of Patents in granting the reissue ipso facto decided that the insufficiency arose by reason of inadvertence. Otherwise, the reissue would not have been allowed. His decision upon the question of inadvertence, accident, or mistake will not be reviewed, unless the matter is manifest from the record, and I cannot say that it is in the instant case. Topliff v. Topliff, 145 U. S. 156, 174, 12 Sup. Ct. 825, 36 L. Ed. 658; Ashley v. Samuel C. Tatum Co. (D. C.) 240 Fed. 979, 981.

In the reissue of the Krauth patent seven new claims were added, and these were based upon the disclosures made in the reissue specification. As to these new claims the original patent was inoperative, and these claims, or at least some of them, the defendant alleges, were based upon the "new matter" introduced into the specification. Defendant's Exhibit 36 is the reissue letters patent, and the defendant has bracketed with pen and ink therein the so-called new matter added to the specification. The provision that "no new matter shall be introduced into the specification" is only another way of saying that the reissued patent shall be for "the same invention" as the original. The same invention refers to whatever invention was described in the original letters patent and appears therein to have been intended to be secured thereby.

[5] It is not new matter within the meaning of this provision to state a new use of the invention shown in the original; to explain, in a reissue, the operation of a device which in the original was only described; to vary and enlarge the description of anything inadequately described in the original. Walker on Patents (4th Ed.) § 240, and cases there cited. An examination of the so-called new matter, bracketed as above stated, will disclose that it is not new matter within the meaning of the statute. Section 4916, U. S. R. S. (Comp. St. § 9461). The "new matter" is the statement of a new use, an explanation of the operation of the device or the varying of the description in the original patent.

[6] Was the reissue applied for with due diligence so as to save the patentee from the charge of abandonment of the "new matter" to the

public? The Supreme Court in the case of Topliff v. Topliff, supra, after an exhaustive review of the cases on the subject, held that due diligence must be exercised in discovering the mistake in the original patent, and that, if it be sought for the purpose of enlarging the claim, the lapse of two years will ordinarily, though not always, be treated as evidence of abandonment of the new matter to the public, to the same extent that a failure by the inventor to apply for a patent within two years from the public use or sale of his invention is regarded by the statute as conclusive evidence of abandonment of the patent to the pub-lic. This general policy enunciated by the Supreme Court has been varied for special reasons in particular cases. In the case at bar, the original patent was issued December 29, 1914, and the reissue was applied for May 1, 1916, a period of one year and four months. The testimony disclosed no special circumstances making a shorter period than that stated by the Supreme Court applicable. The reissue was, therefore, proper.

The defendant contends that an examination of the prior art will disclose that the Krauth patent was anticipated and particularly by the following patents: Cohen, No. 560,829 (improvements in machines for feeding cardboard, etc.); Crawford, No. 955,385 (improvement in ticket dispensing machine); Oehring, No. 929,161 (improvements in feeding devices for vending apparatus or the like); Oppenheimer & Spiegel, No. 1,016,893 (improvements in ticket holding and serving devices); Straight, No. 1,072,055 (improvement in stamp or label delivery mechanisms); Vargyas, No. 906,835 (improved portable fare and ticket receptacle).

In these patents there are, broadly speaking, fingers or their equivalents for entering orifices, notches, or the like, in strips of paper or cardboard, etc., in the feeding operation of said strips, etc., into the machine. These, in a sense, resemble the fingers in the Krauth machine. There are also in the specifications portions here and there descriptive of the devices and their operation, which bear some resemblance to parts of the mechanism or the operation of the Krauth machine. The contention of the defendant amounts to this: That these various descriptions, when brought together and united in a single machine, disclose all the essential elements and principles of the Krauth device, and that to bring them together into combination, called the Krauth autographic register, did not require inventive genius, but only mechanical skill. Before the argument I was inclined to think that this might be true, but upon further consideration I have come to the conclusion that these various disclosures do not anticipate Krauth's patent.

[7] None of these patents cited by defendant were for autographic registers. They were mostly for improvements in ticket holding or feeding machines, and were not at all adapted to do the work of an autographic register as illustrated in the devices of Krauth and the defendant. It is not difficult to follow, but it may be to lead. After a problem has been solved, it is comparatively easy to go back into the prior art, and take patent after patent, and select one element or principle from this one and another from that one, and thus bring together a combination which closely resembles the patented device, and which,

when it has been done, seems to have required the exercise of mechanical skill only. It would, however, be unfair to determine invention by such methods. The most difficult problems, when solved and understood, seem simple. It is unnecessary to analyze in detail the various devices cited against Krauth's machine. It is sufficient to say that every one of them, when considered as a single, distinct device, is unlike his. The combinations and functions materially differ. None of these machines could do the work of Krauth's. While his patent is not basic, and he does not claim the discovery of a new principle, he brought together old principles into a new combination, which produced useful results and filled a long-felt need. He was therefore entitled to a patent. Diamond Rubber Co. v. Consolidated Tire Co., 220 U. S. 428, 435, 31 Sup. Ct. 444, 55 L. Ed. 527; Low et al. v. McMaster (C. C. A.) 266 Fed. 518, 523; Wire Wheel Corporation of America v. Madison Motor Car Co. (D. C.) 267 Fed. 220.

There is no question, in my opinion, about infringement. The defendant's machine is practically a counterpart of Krauth's. The only real questions are the reissue and anticipation, and, these being decided against the contention of defendant, it follows that complainants should have injunctive relief and damages as prayed for.

## On Reargument.

After the decision of this court holding that the plaintiff's patent in the above stated cause was valid, and infringed by the corporate defendant, a notice for an application of reargument was given on the following grounds:

(1) Plaintiffs are estopped as against defendants from enforcing any infringement of any claim in the Krauth reissue that was not also in the Krauth original, because of the intervening rights of the defendants.

(2) The patent is invalid, because neither the original nor the reissue discloses the particular rear pins used upon some of the machines of the complainants.

(3) The patent is invalid, because neither the original nor the reissue discloses the particular shape of the pins.

(4) The defendant's device is invalid, because in the complainant's machine the writing table is mounted between the side frames, so that its upper surface, over which the webs pass, is slightly below the upper edges of the side frames, whereby the walls of the frames serve as guides for the webs, and this is not true of the defendant's device.

[6] The motion was argued, and was in effect a reargument, and as such I have considered it. It has been established by many decisions that, when a person has an original patent of narrow and limited claims and secures a reissue with broad claims, covering a device not embraced within the original claims, the patentee will be estopped from enforcing the broad claims against the defendant, who has spent large sums of money and built up a business between the original issue and the reissue of patent. Likewise, when the claims of his original patent are broad, and the patentee secures a reissue with narrow claims, from which the broad claims have been omitted, and then secures a second

reissue, containing both the narrow and broad claims, he will be estopped from enforcing the broad claims of the second reissue against the defendant, who has between the reissues spent money and built up a business in the belief that the patentee had abandoned his broad claims to the public. In the first case, by not claiming them, he is held to have abandoned them. Miller v. Brass Co., 104 U. S. 350, 26 L. Ed. 783; Mahn v. Harwood, 112 U. S. 354, 5 Sup. Ct. 174, 6 Sup. Ct. 451, 28 L. Ed. 665; Autopiano Co. v. American Player Action Co., 222 Fed. 276, 138 C. C. A. 38; American Automotoneer Co. et al. v. Porter, 232 Fed. 456, 146 C. C. A. 450; Ashley et al. v. Tatum Company (D. C.) 240 Fed. 979.

[9] In the case at bar, however, the original patent contained broad claims. The reissue patent contained all of the broad claims of the original and other narrow claims in addition. I held that some of the claims both in the original and in the reissue were valid and infringed. It nowhere appears that the complainants dedicated to the public or abandoned anything which they are now claiming. And neither does it appear that they have at any time acquiesced in the infringement of the defendant. As to the defendant's intervening rights, its status was not changed in any way by the reissue. It merely began to infringe the reissue as soon as issued and continued to infringe the original claims. My attention has not been called to a single case in which the complainants have been estopped, on the ground of intervening rights, where the original claims, which were broader than the reissue claims, were all retained in the reissue when it was applied for within a reasonable time.

[10] On the second and third points it is sufficient to say that the defendants' device is responsive to the claims of the patent without the rear pins, on which complainants state they have another patent. While the specification and claims are silent as to the particular shape of the pins, if it be considered necessary that this should be made known, attention is called to the fact that the drawings, in connection with which the claims and specification must be construed, disclose their shape.

[11] As to the fourth ground, that the writing table in Figure 4 is limited to a depressed table forming a guide, that is a minor detail of the patent and is not one of the novel features. True it is that the table is a part of the combinations, but as such it is old in the art. It is mentioned in the specifications, and is expressly recited in structure and function in claim 17, but is omitted from the other claims. The contention that the defendant's device does not conform to this limitation is therefore not sufficient to defeat the validity of the patent.

The defendant has not occupied a very consistent position throughout this litigation. After the reissue it petitioned the Commissioner of Patents for an interference on the reissue claims in suit, and alleged the validity of the claims, and that Walter C. Shoup and Oliver were the original inventors, and not Krauth. Further, the defendant applied for a patent and copied the reissue claims in suit, and Shoup, its president, acting on the validity of the claims, made affidavit in which he stated that the claims represented inventions readable on the de-

fendant's device. In other words, in the interference and in the attempt to secure a patent by Shoup and Oliver, the entire action was based upon the validity of the claims in issue. Shoup asserted the validity of the same invention then, when he thought he had an opportunity to secure it for himself, that he now attacks and denies, when the invention has been secured by another.

After considering the case with the help of the reargument, I am of the opinion that the complainant should have injunctive relief and damages, as stated in my former memorandum.

⬡=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes