## AMERICAN CHEMICAL PAINT CO. v. C. R. WILSON BODY CO.

(District Court, D. Delaware. March 31, 1924.)

No. 514.

1. Patents ⬤⟿328—1,109,670, for method of preparing steel for painting, held valid and infringed.

The Feidt patent, No. 1,109,670, for method of preparing steel for painting, *held* patent for process, as distinguished from principle or effect, and not anticipated, valid, and infringed.

2. Patents ⬤⟿7—Method of preparing steel for painting patentable.

A method of preparing steel for painting is a true process of art, as distinguished from a principle or effect, and is patentable.

In Equity. Suit by the American Chemical Paint Company against the C. R. Wilson Body Company. Decree for plaintiff.

Augustus B. Stoughton, of Philadelphia, Pa., and Charles F. Curley (of Saulsbury, Curley & Davis), of Wilmington, Del., for plaintiff.

Homer C. Underwood, Otto F. Barthel, and Philip H. Robinson, all of Detroit, Mich., and Sylvester D. Townsend, Jr., of Wilmington, Del., for defendant.

MORRIS, District Judge. The five claims of letters patent No. 1,109,670, granted September 8, 1914, to the assignee of George D. Feidt, for a new method of preparing steel for painting, are involved in this infringement suit in equity, now on final hearing, of American Paint Company v. C. R. Wilson Body Company. Each of the five

claims is met, for like reasons, with the defenses of invalidity and non-infringement. The second claim may be considered typical. It is:

"The method of preparing steel for painting, which consists in treating it with an admixture of alcohol and phosphoric acid, which will dissolve oil and act on the steel."

[1, 2] The first asserted ground of invalidity is that the claims are lacking in patentable subject-matter, in that they are for a principle or for an effect, and not for a process. But I think it obvious that they are not claims for a principle or natural force. I think it likewise clear that, when the claims are read in the light of or limited by the specifications, as they must be (Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33, Mitchell v. Tilghman, 19 Wall. 287, 22 L. Ed. 125), they call, not for a result, or for all means of accomplishing a result, but for a specific mode of treatment of certain material to produce a given result. The invention consists in the subjection of a specific object to the influence of a specific force through a specific mode of application. That is a true process or art, as distinguished from a principle or effect, and as such is within the scope of the patent act, and consequently is patentable subject-matter. Cochrane v. Deener, 94 U. S. 780, 788, 24 L. Ed. 139; Corning v. Burden, 15 How. 252, 268, 14 L. Ed. 683.

The specific mode of treating steel, to prepare it for a specific purpose (painting), described in the Feidt patent, and the utility of his invention, may be considered together. Steel, when in the presence of moisture and either carbonic acid gas, hydrochloric acid, or any one of many salts, is gradually converted into hydrated ferric oxide, or rust. Paint will protect it from oxygen, water, and carbonic acid gas; but, if the surface of the steel is not free from or rendered immune to rust stimulants before the paint is applied, rusting may continue beneath the paint, and cause the paint to blister and come off. The necessity for a remedy to prevent the rusting of steel beneath the priming coat of paint, the object of the patent in suit, became acute when bodies for automobiles began to be made of steel, probably about 1912. The parts were electrically welded. Cracks and depressions, which in woodwork would be filled with putty, were filled with solder. Fluxes, containing zinc chloride, a rust stimulant, were employed. The bodies were, at times, stained and soiled with rust and grease. They rusted or continued to rust after they were painted. The paint blistered and came off in spots and streaks.

Alcohol, gasoline, lemon juice, and like matters were applied to the bodies before painting, and the bodies were also brightly burnished, but all to no avail. The paint still blistered and came off. The painted bodies put upon the market were returned to the painters in carloads, and later, as the output increased, in trainloads. The painters were in distress. They lost money rapidly. Many were on the verge of failure. The search for a remedy continued. Feidt, who was engaged in the business of selling a soldering fluid, was appealed to. He furnished an admixture of alcohol and phosphoric acid, to be applied to the steel in the mode set out in the specification. The cause of the trouble was removed. The paint stayed on. The remedy was a complete success. Its great utility was demonstrated. The mode of application,

which includes both the method of putting the admixture upon the steel and of controlling its action, is thus set out in the patent:

"The application of the solution is preferably made with a brush, the operation being similar to that of painting. There is no objection, however, to dipping the article into a bath of the solution when it is convenient to do so. A suitable strength for the solution will be found to be orthophosphoric acid, one part by volume (85 per cent. solution), and alcohol, two parts by volume. The result of this is the formation of an alcohol phosphate dissolved in the excess of alcohol.

"The process as applied to sheet steel work, such as interior finish, automobile bodies, etc., is as follows: The article is painted with an alcoholic solution of orthophosphoric acid. In cases where there is much rust incrusted on the surface of the steel, the action of the acid is assisted by rubbing the rusty spot with emery cloth, care being taken to keep the spot wet with the solution. A period of from one to three minutes is now allowed for the solution to act. The steel is then wiped dry with a cloth or waste. It is now ready for painting. * * *"

A more complete idea of means, of its several factors, and of an application of that idea to the production of a practical result, than that of the claims, read in the light of the specification (Washer Co. v. Cramer [C. C. A. 3] 169 Fed. 629, 633, 95 C. C. A. 157), would, as I venture to think, be difficult to conceive (Robinson on Patents, §§ 77, 101–104).

But are the claims lacking in novelty? British patent No. 3,119, of 1869, to Ross, and United States letters patent No. 870,937, granted November 12, 1907, to Coslett, are cited, among others not necessary to be considered—as anticipations. The Ross patent was for:

"Improvements in preserving the surface of iron, steel, copper, brass, and other metals, or amalgams, from being rusted or oxydized by exposure to water or damp air or perspiration."

His provisional specification states:

"My invention then is to apply hydrated [glacial] phosphoric acid, or phosphorous acid, or hypophosphorous acid, or other salt of phosphorus, but especially phosphoric acid, to the clean surface of iron or copper as above, either cold on the cold metal, or heated on the hot metal by rubbing it well in with the blade of a table knife or other smooth polished iron instrument, by which means the surface of the iron or metal so treated is chemically acted upon, and a coating of what is at present termed in chemical works 'phosphide of iron' formed, which will preserve the iron, steel, or metal so treated from the injurious action (in the shape of rust or other oxide) of water or damp air or perspiration.

"And my invention further is to combine or mix either by the application of heat or any other means the said phosphoric acid or other salt of phosphorus with boracic acid or other chemical salt, or with spirituous, fatty, oleaginous, resinous or other organic substances in which it may be soluble, or which it may dissolve, or with all these or any of them combined, and to apply such combination in the manner above mentioned to the surface of the metal to be treated, either in a hot or cold state, and further to mix or combine with such preparation graphite (commonly called black lead), silica, alumina, lime, or other of the 'earths' or their salts, and to apply such combination as above explained."

Ross does teach that a clean surface of steel may be preserved from the injurious (rusting) action of water or damp air or perspiration by the use of phosphoric acid rubbed in well by a smooth polished iron instrument. But Feidt cleans, prevents rusting, and leaves the surface

of the steel in a physical condition suitable for painting and free from chemicals injurious to the paint. All these things he does by a method of application of his force to the steel wholly different from that of Ross.

Coslett's patent is likewise for an improvement in the treatment of iron or steel, generally, to prevent rusting. Like Ross, Coslett starts with iron or steel "thoroughly cleaned." It is then immersed in or "otherwise subjected to" the action of a dilute aqueous solution of phosphoric acid, to which there may or may not be added a suitable substance, such as iron filings, ferrous sulphate, for the purpose of controlling the rapidity or strength of the chemical action. Directions are also included for the use of electricity and heat. The treatment results in a coating of phosphate of iron, which, the patent says, is unaffected by oxidizing "influences." Feidt, however, does not use for his force the Coslett compound, nor does he control the action of his force in the manner specified by Coslett. I think that neither the Ross nor the Coslett patent constitutes an anticipation of the Feidt process. The only question, as I see it, presented by those patents is whether the Feidt process was derivable from their disclosures without the further use of inventive skill. With respect to his admixture Feidt says in his patent:

"Although several different chemical solutions can be used for the purpose, the most practical known to me at the present time is an alcoholic solution of ethyl phosphate. This is made by dissolving orthophosphoric acid, as free from water as possible, in ethyl alcohol, in such proportions that there will be an excess of free alcohol. Orthophosphoric acid will not of itself act on an oily surface, nor will it act if the surface is first washed with ethyl alcohol and dried; but when the alcohol and the acid are combined the compound of the two will act on an oily surface. This is undoubtedly due to the fact that the ethyl phosphate formed by the combination has distinctive properties of its own."

There is evidence that the Feidt admixture can be separated into its component parts. Even if this tends to show that the admixture is a mere aggregation or collocation of the respective properties of alcohol and phosphoric acid, it does not negative the conclusion that those properties co-operate in the production of the result, or that, even if the admixture is old, Feidt did not discover in it a hitherto unknown property or capability. Moreover, there is evidence sustaining the statement of the patent. Again, there is no evidence that the consecutive application of alcohol and phosphoric acid has been tried and found successful. Still again, Feidt limits the action of his admixture upon the steel. There is nothing to establish that the Feidt process was within the reach of a person skilled in the art, whether that person be a painter, an iron worker, or a chemist. The Feidt process possesses many advantages. They are thus stated in the patent:

"It can be applied to any steel article, no matter how large or small; it can be applied to hollow steel structures having a filling of cork, or the like; it is a cold process, and will not melt solder or cause buckling; after application the steel does not have to be painted for many days; the steel will stand considerable handling before painting; it enters all cracks and crevices; it requires no tanks or special machinery, and can be employed by unskilled labor at comparatively little expense."

The Feidt process has gone into wide general use. I think the claims of the Feidt patent do not lack invention. I see no substantial difference between the process used by the defendant and that embodied in the claims in suit. The admixture used by the defendant contains more water and some other ingredients possibly not contained in the Feidt admixture, but the properties of the Feidt admixture are there dominant, and are not substantially affected by the additions. The defendant applies its admixture or compound substantially in the same manner, upon the same objects, for the same purpose, and produces the same result as does Feidt. The defendant's process is a substantial embodiment of the essence of the Feidt process.

I am of the opinion that the claims in suit are valid and infringed.